The Osceola Tribe, No. 11, I. O. R. M. *vs.* Schmidt, Adm'x.

money actually paid away, according to his sworn answer, to persons entitled as distributees. The order will be reversed.

*Reversed with costs.*

(Decided 30th June, 1881.)

THE OSCEOLA TRIBE, No. 11, INDEPENDENT ORDER. OF RED MEN *vs.* CAROLINE SCHMIDT, Administratrix of AUGUST SCHMIDT.

*Jurisdiction—Suit for Benefits by a Member, prohibited by the Laws of the Order—Judgment on Demurrer—Variance— Defective Prayer.*

The by-laws of the appellant (of which the appellee's intestate was. a member,) provided that whenever a member had cause of complaint, on questions which related to his enjoyment of benefits, he· should seek redress from his tribe, and if against him, on appeal from its decision to the Grand Tribe of Maryland, and on that, to· the Grand Tribe of the United States, and should he neglect to pursue such course, and should bring suit in a tribunal outside the order, he would be subject to expulsion. It appears, that the appellee's intestate pursued the course prescribed, and his claim having been decided against him, originally and on the appeals, he brought this suit to recover sick benefits from the appellant.. HELD :

· That the proceedings mentioned being specially pleaded and relied upon as a bar to this action, were conclusive against the appellee's. right to recover.

Upon a demurrer, the Court, notwithstanding there may be a defect in the pleading demurred to, will give judgment against the party whose pleading is first defective in substance.

A prayer that the plaintiff was entitled to recover, if the jury found the facts therein stated, three dollars and fifty cents per week of·

sick benefits from a Tribe of Red Men, while the declaration only claimed three dollars per week, was bad.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court. The third, fourth, fifth, and sixth pleas of the appellant referred to in the opinion are as follows:

And for a third plea: That said plaintiff, before the institution of this suit, to wit: on the first day of August, in the year 1877, in accordance with the constitution and by-laws of said defendant, appealed from the refusal of the defendant to pay to him said weekly sum of $3 during his sickness, in said declaration mentioned, to the Grand Tribe of Maryland, and the said Grand Tribe of Maryland sustained the defendant in its refusal to pay said weekly sum of $3.00 during said plaintiff's sickness in said declaration mentioned, and said plaintiff, in accordance with the constitution and by-laws of said defendant, appealed from the decision of said Grand Tribe of Maryland, to the Grand Tribe of the United States, and the said Grand Tribe of the United States affirmed the decision of the said Grand Tribe of Maryland, and sustained the defendant in its refusal to pay said weekly sum of $3.00 during said plaintiff's sickness, set forth in said declaration.

And for a fourth plea: That the said plaintiff, before the institution of this suit, to wit: on the first day of August, in the year 1876, in consideration of becoming a member of said corporation, promised to abide by the constitution and by-laws of the same, and all acts done in accordance therewith, and that the refusal to pay the plaintiff the weekly sum of $3.00 during his sickness, as set forth in said declaration, was in accordance with the constitution and by-laws of said defendant.

And for a fifth plea: That the plaintiff before the institution of this suit, to wit: on the first day of August,

1876, in consideration of becoming a member of the defendant, promised to abide by the constitution and by-laws of the Grand Tribe of Maryland, and all acts done in pursuance thereof, and that the said Grand Tribe of Maryland, in pursuance of its constitution and by-laws, passed an act sustaining the defendant in its refusal to pay the plaintiff the weekly sum of $3.00 during his sickness in said declararion mentioned.

And for a sixth plea: That the plaintiff heretofore, to wit: on the first day of August, 1876, in consideration of becoming a member of the defendant, promised to abide by the constitution and by-laws of the Grand Tribe of the United States, and all acts done in pursuance thereof, and that the said Grand Tribe of the United States, heretofore, to wit: on the thirtieth day of September, 1877, and before the institution of this suit, in pursuance of its constitution and by-laws, passed an act sustaining the defendant in its refusal to pay to the plaintiff the weekly sum of $3.00 during his sickness in said declaration mentioned.

*Exceptions.*—At the trial, the plaintiff offered the following prayer:

If the jury shall find that the plaintiff's testator was a member of the defendant-corporation on August 11th, 1876; that the constitution and by-laws of the defendant were, as has been read in evidence; that the said testator had received, as such member, $3.50 per week as sick dues for more than eighty weeks, and that he then was so disabled by sickness as to be unable to attend to his daily occupations, and so remained from the said date to the institution of this suit, and that the defendant corporation had full notice, by its officers and agents, of his said disability, and its continuance, and that it failed to pay him any sum or sums of money whatever during all the time aforesaid, although payment thereof was demanded by him, then under the pleadings and evidence, they must

find for the plaintiff in the sum of $3.50 for each week of the said period, with interest in their discretion, notwithstanding the alleged proceedings of the Grand Tribes of Maryland and the United States, offered in evidence.

The defendant offered seven prayers, which accord in their statement of the law with the decision of this Court; they need not be stated.

The Court, (GAREY, J.) granted the prayer of the plaintiff and rejected all the prayers of the defendant. The defendant excepted; and the verdict and judgment for $227.06 and costs being for the plaintiff, the defendant appealed.

The cause was argued before BARTOL, C. J., GRASON, ALVEY, ROBINSON and MAGRUDER, J.

*Louis Hennighausen* and *Wm. Shepard Bryan*, for the appellant.

The defences made by the pleas, and under the prayers, are shown to be complete and effective by the case of the *Anacosta Tribe*, 13 *Md.*, 91. The eleventh plea was a good plea in bar, inasmuch as it showed that the plaintiff could not maintain any action at any time in respect of the matters stated in the declaration. 1 *Chitty's Pleading*, 434 *m. p.* There was no reason for striking it out.

The demurrers were erroneously sustained by the Court. But there was another error in the Court's ruling. The declaration is bad in substance, and the Court ought to have given judgment against the party who committed the first error in pleading. *Chitty on Pleading*, 647.

The declaration does not set forth any consideration, or any promise by the defendant to pay the plaintiff anything ; or any agreement with him of any kind. It states that he is entitled to receive during his sickness the weekly sum of three dollars, and that the plaintiff has been sick a long time. It does not state from whom he

is entitled to receive it; nor what consideration entitles him to receive it; nor how long he has been sick; nor does it furnish any data, from which the amount claimed may be estimated. The declaration is bad for uncertainty, as well as for a failure to state any consideration. *Chitty's Pleading*, 261.

The plaintiff's prayer required the jury to disregard entirely the proceedings of the Grand Tribes. They could not consider them for any purpose, and could not draw inferences from them. There was also another fatal error in the prayer. The jury are required, on the finding of certain facts, to find under the pleadings and evidence a verdict for three dollars and fifty cents for each week of plaintiff's sickness. By the declaration, he claimed only three dollars a week. The verdict was for the larger amount.

*Charles J. Bonaparte*, for the appellee.

The question at issue in this cause is simply : Was the appellant justified under its by-laws in withholding the appellee's benefits as a means of compelling him to go to an infirmary? It was indisputable and undisputed, that this question would be rightly answered in the negative, since a production of the appellant's constitution, &c., confirmed what was stated in the report set forth in the record, *i. e.*, that "there is no provision in its by-laws which says that a brother can be compelled, by a resolution of the Tribe, to go to a hospital."

Nor did the action taken by either of the Grand Tribes in any wise question the correctness of this position, for the Grand Tribe of Maryland, merely "adopted" the report of its committee on complaints, and the Grand Tribe of the United States only "sustained and affirmed the decision" of the other Tribe.

The import of the action taken by both Tribes must depend therefore upon the report of the committee; and

an examination of this shows, that they confined themselves to "admiring" the humane action of the appellant, and "advising" Schmidt to go to the infirmary. There was undoubtedly some reason to call the offer of the appellant, made by its resolution of August 18th, "humane" and even generous, and the "advice" given to Schmidt was probably judicious, but in no proper sense can the committee be said to have *decided* anything. The successive action of the two Grand Tribes amounted to this, and no more; *they refused to interfere* on behalf of the appellee's intestate, leaving him to his legal remedies against the appellant.

The case of *Anacosta Tribe vs. Murbach*, establishes that when a member has been *expelled* after a trial before some tribunal "whose decision" by the laws of the order "shall be *final*," (13 *Md.*, 94,) he cannot *collaterally question* the rightfulness of his expulsion by a suit to recover the benefits to which he would otherwise have been entitled; but must first, if unjustly expelled, procure his restoration by *mandamus.* 13 *Md.*, 92; *Black and White Smith Soc. vs. Van Dyke*, 2 *Whart.*, 309.

In this case, Schmidt was admittedly a member in good standing of the appellant, at the time of bringing this suit, and down to his death, more than two years later, and the by-law relied upon by the appellant contains no clause to the effect that the decision of any one of the Tribes "shall be final;" on the contrary, a penalty is imposed upon a member who brings suit in a Court of law without *first* applying to the tribunals of the Order, which penalty was not inflicted, or sought to be inflicted upon Schmidt. We have, therefore, both a clear implication that *after* exhausting the means of redress provided by the Order, each member retained the right of appealing to the Courts, and a construction of the section by the appellant itself is in harmony with this view.

The doctrine suggested in some decisions in other States, that societies, like the appellant, are protected by their

charters from suits for benefits *under any circumstances*, was necessarily repudiated by this Court when it sustained the judgment in *Osceola Tribe vs. Rost*, 15 *Md.*, 295.

It will be further noted that the *Anacosta Tribe Case* was tried in this Court under an agreement, (13 *Md.*, 92, 94;) that the question of jurisdiction in the Court below should be determined, and all errors and informalities be waived. In this case, the defendant raised this question by a plea to the jurisdiction, which the Court struck out upon motion, because the defendant had waived all objections to the jurisdiction, by not pleading on or before the rule-day, and subsequently filing ten pleas to the merits. *Yoe vs. Gelston*, 37 *Md.*, 233; *Burnham vs. Webster*, 5 *Mass.*, 266; *Sheppard vs. Graves*, 14 *How.*, 505.

The merits of this controversy are shown by the record so decisively to be with the appellee, that the numerous and minute questions raised by the pleadings and prayers of the appellant, may be disposed of very briefly. The fourth plea, if good at all, was equivalent to the general issue, and therefore demurrable. *Miller vs. Miller*, 41 *Md.*, 623.

The third plea set out nothing which could constitute a bar to the action. The fifth and sixth pleas, at best, alleged a breach of contract by the plaintiff, towards third parties.

GRASON, J., delivered the opinion of the Court.

This suit was instituted by August Schmidt, to recover sick benefits from the appellant, alleged to be a corporation under the laws of this State, of which he was a member. The proof shows that he was sick for some time, and that the appellant refused to pay him the sum of three dollars a week, during his sickness, which he alleged to be due him under its laws.

The by-laws of the appellant, and the charter and constitution of the Grand Tribe of Maryland, were offered in evidence. The first Article of the former provides that it shall work under the jurisdiction of the Grand Tribe of Maryland. The sixth Article provides that whenever a member has cause of complaint against his Tribe on questions which relate to his enjoyment of benefits, he must first apply to the Grand Tribe of Maryland, and if its decision does not satisfy him, apply to the Grand Tribe of the United States; and if he neglects to pursue this course, and brings a suit in a tribunal outside the Order, he shall be subject to expulsion. The proof shows that Schmidt, after the appellant declined to pay him benefits, did apply to the Grand Tribe of Maryland, and afterwards from its decision appealed to the Grand Tribe of the United States, which affirmed the decision of the Grand Tribe of Maryland. He afterwards brought this suit. These proceedings were specially pleaded and relied upon as a bar to this action, and are conclusive against the appellee's right to recover.

It was decided in *Vandyke's Case* in the Supreme Court of Pennsylvania, 3 *Wharton*, 312, that where a beneficial society had decided under its by-laws, that a member was not entitled to benefits, the decision was conclusive upon him, and Chief Justice GIBSON, who delivered the opinion of the Court, says: "Into the regularity of these proceedings, it is not permitted us to look. The sentence of the society, acting in a judicial capacity, and with undoubted jurisdiction of the subject-matter, is not to be questioned collaterally, while it remains unreversed by superior authority." He also says: "The society never consented to expose itself to the costs and vexation of an action for every weekly pittance that might be in arrear." But the question has been set at rest in this State by the decision of this Court, in the case of *Anacosta Tribe of Red Men vs. Murbach*, 13 *Md.*, 94 and 95. That also, was

a suit to recover benefits. The by-laws of that society provided that questions as to benefits should be decided by the Tribe, and the decision of the Tribe being against his right to receive them, he brought suit to recover them, and upon appeal, this Court said, "These are private beneficial institutions operating on the members only, who, for reasons of policy and convenience affecting their welfare, and perhaps their existence, adopt laws for their government, to be administered by themselves, to which every person who joins them assents. They require the surrender of no right that a man may not waive, and are obligatory on him, only so long as he chooses to recognize their authority. In the present instance, the party appears to have been subjected to the general laws and by-laws according to the usual course, and if the tribunal of his own choice has decided against him, he ought not to complain. It would very much impair the usefulness of such institutions, if they are to be harassed by petty suits of this kind, and this, probably was a controlling consideration in determining the manner of assessing benefits, and passing upon the conduct of members." The Court refers to *Vandyke's Case*, and adopts the views of Chief Justice GIBSON, as "altogether satisfactory."

As the appellant's pleas, seven to ten inclusive, and its additional pleas raise the question, we have determined, it is only necessary to say, that upon the demurrer to the third, fourth, fifth and sixth pleas, to which it was sustained, there should have been judgment for the appellant, because the declaration was defective in substance, in not stating any consideration moving from the appellee to the appellant, whereby the latter became liable to pay benefits to the former, and did not state from whom he was entitled to receive benefits, nor what amount, nor the length of time he was sick; it being the established rule, upon a demurrer, that the Court, notwithstanding there may be a defect in the pleading demurred to, will give

The pleas, raising the points we have decided in this case, it was contended by the counsel of the appellee, were pleas in abatement, and therefore not pleaded in time. These pleas do not point the appellee to a different form of action, or to another mode of proceeding, but present a flat *bar* to any suit in any form in which any recovery could be had.

From what we have said, it follows that there was error in granting the appellee's prayer, which was also bad, because by it the jury were instructed, if they found the facts therein stated to be true, that the appellee was entitled to recover three dollars and fifty cents per week, while the declaration only claimed *three* dollars per week. and as the appellee can, in no event, recover in this suit, the judgment appealed from will be reversed without awarding a new trial.

*Judgment reversed.*