[Civil No. 2492.    Filed October 5, 1926.]

[249 Pac. 764.]

## EMPLOYEE'S BENEFIT ASSOCIATION OF THE CALUMET & ARIZONA MINING COMPANY, a Domestic Mutual Benefit Association, et als., Appellants, v. ELIZA A. JOHNS, Appellee.

INSURANCE—BY-LAW OF ASSOCIATION, MAKING DECISION OF ITS BOARD OF TRUSTEES ON APPEAL FINAL, DOES NOT PRECLUDE REPRESENTATIVE OF MEMBER FOR WHOSE DEATH BENEFITS ARE SOUGHT, FROM SUING IN THE COURTS.—By-law of mutual benefit association, providing that decision of its board of trustees on appeal shall be conclusive, is void, as against public policy, as applied to controversy over property rights under policies, and does not preclude representative of member, for whose death financial benefits are sought, and who has expressly agreed to accept such by-laws, from suing in the courts.

See (1) 29 Cyc., p. 209, n. 61.

APPEAL from a judgment of the Superior Court of the County of Cochise. Albert M. Sames, Judge. Affirmed.

Mr. J. T. Kingsbury, for Appellants.

Mr. Alexander Murry and Mr. Frank Thomas, for Appellee.

LOCKWOOD, J. — Eliza A. Johns, hereinafter called appellee, brought suit against Employee's

1. Validity of Constitution or by-laws as to conclusiveness of decisions of benefit associations, see note in 51 A. L. R. 1420. See, also, 19 R. C. L. 1231.

Recourse to courts by members of benevolent, beneficial and similar associations to protect property, see notes in 3 Ann. Cas. 211; Ann. Cas. 1915B 398; Ann. Cas. 1918E, 1178. See, also, 19 Cal. Jur. 510; 19 R. C. L. 1225.

Conclusiveness of decisions of tribunals of beneficial associations and power of courts to review them, see note in 52 Am. St. Rep. 546. See, also, 19 R. C. L. 1227.

Benefit Association of the Calumet & Arizona Mining Company, a domestic mutual benefit association, and also joined certain individuals as trustees of said association and the Calumet & Arizona Mining Company, a corporation. We will hereinafter refer to the benefit association as appellant, since it was the real party in interest; the other defendants being joined merely for formal legal reasons.

It appears that the employees of the Calumet & Arizona Mining Company, a corporation operating a mine at Bisbee, Arizona, had organized a domestic mutual benefit association for the purpose of mutually insuring each other, and on or about the 1st of November, 1922, adopted certain rules and regulations for its government. Among such rules and regulations are found the following:

"49. *Appeal.* All questions or controversies of whatsoever character, arising in any manner, or between any parties or persons, in connection with the association or the operation thereof, whether as to any claim for benefits preferred by any member or his legal representative or his beneficiary, or any other person, or whether as to the construction of language or meaning of the rules, or as to any writing, decision, instruction or acts in connection with the operation of the association, shall be submitted within sixty (60) days of the time of the decision from which an appeal is taken, to the superintendent, whose decision shall be final and conclusive, unless an appeal in writing from such decision shall be taken to the board of trustees, within thirty (30) days after notice of such decision to the parties interested.

"50. *Hearing.* When an appeal is taken to the board of trustees, it shall be heard by the trustees without further notice, at their next stated meeting, or at such future meeting or time as they may designate, and shall be determined by a vote of the majority of the members present at such meeting and the decision of the trustees shall be final and conclusive upon all parties without exception or appeal."

On the sixteenth day of November, 1922, William E. Johns joined the association and in his signed application stated as follows:

"I also agree for myself and those claiming through me to be governed by the regulations providing for final and conclusive settlement of all claims for benefits, or controversies of whatever nature by reference to the superintendent of the association and an appeal from his decision to the board of trustees."

A certificate of membership was duly issued to the said Johns and about the eighteenth day of May, 1923, he died as the result of an accident. Thereafter appellee, being the surviving widow of Johns, filed her claim for compensation with the superintendent of the association. This claim was denied by him and appellee prosecuted her appeal to the board of trustees as provided in the by-laws. On the 31st of July, 1923, the trustees affirmed the decision of the superintendent and refused appellee any death benefits, on the ground that it appeared she was not entitled to any under the rules and regulations of the association. Thereafter she filed suit in the superior court of Cochise county as aforesaid.

The matter came on for trial before a jury, and appellee introduced certain evidence and rested her case. Thereupon appellant moved to take the case from the jury on the ground that it appeared decedent, William Johns, had agreed for himself and those claiming through him to accept the decision of the board of trustees on any claim for benefits arising out of his membership in the association as final and conclusive, without the right of appeal therefrom, and that the board had decided against appellee's claim under this certificate of membership. The motion to take the case from the jury was denied, and a verdict was returned in favor of appellee for the sum of $1,500, upon which judgment was

duly entered, and appellant brought the matter before us for review.

There is but one assignment of error, which presents a single proposition of law. The point involved is as follows: Where a mutual benefit association, not organized for profit or gain, declares in its by-laws that the decision of its board of trustees on appeal shall be final and conclusive on all controversies over the alleged rights of members, and where a member of the association, on account of whose sickness or death financial benefits are sought, has expressly agreed to accept such by-laws as binding, may he, or his representative in case of death, after the adjudication of the board has been against him, and there is no claim of fraud or unfair dealing on their part, appeal to the courts for a determination of the very questions on which he agreed to accept the adjudication of the officers of the association as final?

This question of law has been presented repeatedly to the courts of many different states, and we find the decisions to be in hopeless conflict. The state of Maryland probably represents the extreme rule on one side. In *Donnelly* v. *Supreme Council, etc.,* 106 Md. 425, 124 Am. St. Rep. 499, 67 Atl. 276, the court says:

"It is sufficient to say that this court has expressly decided that it is competent for the members of an order, such as the defendant, to agree that questions between the members and the order relating to property rights may be referred to and settled by tribunals established within the order, and that the courts will not undertake to inquire into the regularity of the procedure adopted and pursued by those tribunals in reaching their conclusions. Each of these propositions was distinctly established in the case of *Osceola Tribe, No. 11, O. R. M.,* v. *Schmidt, Adm'r,* 57 Md. 105, in which this court adopted the rule laid down by the Supreme Court of Pennsylvania in *Van Dyke's Case,* 2 Whart. 312, 30 Am. Dec.

263, in which a beneficial society had decided under its by-laws that a member was not entitled to benefits. Judge Grason, who delivered the opinion in Schmidt's Case, quotes with approval the following language of Chief Justice Gibson:

" 'Into the regularity of these proceedings it is not permitted us to look. The sentence of the society, acting in a judicial capacity, and with undoubted jurisdiction of the subject-matter, is not to be questioned collaterally, while it remains unreversed by superior authority.' 'These are private beneficial institutions operating on the members only, who, for reasons of policy and convenience affecting their welfare, and perhaps their existence, adopt laws for their government, to be administered by themselves, to which every person who joins them assents. They require the surrender of no right that a man may not waive, and are obligatory on him only so long as he chooses to recognize their authority. In the present instance, the party appears to have been subjected to the general laws and by-laws according to the usual course, and, if the tribunal of his own choice has decided against him, he ought not to complain. *It would very much impair the usefulness of such institutions if they are to be harrassed by petty suits of this kind, and this probably was a controlling consideration in determining the manner of assessing benefits and passing upon the conduct of members.*' "   (Italic ours.)

"The proposition that the member is not precluded from suing at law, after he has exhausted his remedies within the order, unless the contract specifically provides that the decisions of the tribunals of the order shall be final, is supported by the decisions of some states, among which are the states of Illinois and Indiana; but the Maryland rule is otherwise. That rule was expressed with clearness and precision by the learned judge who decided this case below to be that, when the tribunals of the order have power to decide a disputed question, 'their jurisdiction is exclusive, whether there is a by-law stating such decision to be final, or not, and that the courts cannot be invoked to review their decisions of questions coming properly before them,

except in cases of fraud. This is true, whether the member does not press his claim at all before the tribunals of the order, or whether he carries it through the final tribunal, or whether he goes through only a part of the hearings which he might have in the order. . . . ' The rule contended for by appellant might subject the order to litigation over every question of property right affecting the member, would render the tribunals of the order practically useless, and would defeat the object for which they were established. In *Osceola Tribe* v. *Schmidt, Adm'r, supra,* there was no law providing that the decisions of the tribe should be final, and this omission was urged as a reason why the suit could be maintained; but this court applied the rule declared in *Anacosta Tribe of Redmen* v. *Murbach,* 13 Md. 94, 71 Am. Dec. 625, to the case, and held that the adverse decisions of the tribunals of the order constituted a flat bar to the plaintiff's right to recover. . . . ''

This case probably goes further than any other, but it is supported in general by very respectable authority, particularly when it appeared that the member had agreed in advance that the decision of the tribunals of the order should be final. In *Rood* v. *Railway Pass. & Freight Con. Mut. Ben. Assn.* (C. C.), 31 Fed. 62, the court said:

"This is a purely voluntary association. The members of the association have, by their own organic law, provided a tribunal to hear and determine all claims against it, and I do not think any court can be invoked to review the action of the board in a matter so completely delegated to them. To attempt to enforce by suit any claim which the board of directors has acted upon, or refused to allow or approve, is equivalent to prosecuting an appeal from this board. It was certainly competent for the members of this association to agree among themselves that the action of their board of directors in reference to any claims presented against the association should be final; and there can be no doubt, from

the language of the clause from the constitution just quoted, that they have so agreed. . . . ''

The same general rule has been upheld by the Supreme Courts of Pennsylvania and Michigan in many cases. The position of the California courts seems to be more in doubt. Apparently they have never definitely and specifically determined whether or not a claim to a property right of this nature could be prosecuted in the courts after the member or his representative had exhausted his remedies through the order, though the question has often been discussed. *Robinson* v. *Templar Lodge,* 97 Cal. 62, 31 Pac. 609; *Levy* v. *Magnolia Lodge,* 110 Cal. 297, 42 Pac. 887; *Berlin* v. *Eureka Lodge,* 132 Cal. 294, 64 Pac. 254; *Grimbley* v. *Harrold,* 125 Cal. 24, 73 Am. St. Rep. 19, 57 Pac. 558; *Schou* v. *Sotoyome Tribe No. 12, I. O. R.,* 140 Cal. 254, 73 Pac. 996.

In the state of Illinois, in the case of *Railway Pass. & Freight Con. Mut. Ben. Assn.* v. *Robinson,* 147 Ill. 138, 35 N. E. 168, the court seemed rather reluctantly to take the same view, stating:

''That it is competent for members of societies of this character to so contract that their rights as members shall depend upon the determination of some tribunal of their own choice, and that such determination shall be conclusive, may be conceded. But where the designated tribunal is the society itself, one of the parties to the controversy, or, what is substantially the same thing, the board of directors, which is its official and organic representative, the courts will hesitate and even refuse to treat its decisions as final and conclusive, unless the language of the contract is such as to preclude any other construction. The judicial mind is so strongly against the propriety of allowing one of the parties, or its especial representative, to be judge or arbitrator in its own case, that even a strained interpretation will be resorted to if necessary to avoid that result. . . . ''

And on the particular facts of that case the court did strain its interpretation, in order to limit the power of the board of directors of the association. The matter, however, was discussed later in the state of Illinois in the cases of *Railway Pass., etc.,* v. *Tucker,* 157 Ill. 194, 42 N. E. 398, 44 N. E. 286, *Bond* v. *Grand Lodge Brotherhood, etc.,* 165 Ill. App. 491, and *Great Hive L. of the M. M.* v. *Hodge,* 130 Ill. App. 1, wherein the courts of Illinois still seem to be very dubious as to the propriety of enforcing such provisions.

On the other side of the question, however, we also find many decisions. We think that, as the rule just presented finds its best support in the case of *Donnelly* v. *Supreme Council et al., supra,* the contrary one and some of the logical reasons in favor of it are best presented in *Pepin* v. *Société St. Jean Baptiste,* 23 R. I. 81, 91 Am. St. Rep. 620, 49 Atl. 387, and we quote therefrom:

"The plaintiff sues in *assumpsit* to recover for benefits which he alleges are due to him under the by-laws of the society, to which he also alleges that he has in all things conformed; that he has exhausted all the remedies within the society, and that the society has refused to pay the same. The defendant pleads specially that a by-law of the society requires every contestation between the society and a member to be referred to and be decided by a committee of five persons, two appointed by the society, two by the member, and the fifth by the other four, and that the decision of the committee is final; that the defendant was always ready and willing to submit said claim of the plaintiff to such committee, but the plaintiff failed to accept said offer, and refused to submit his said claim to the arbitration of such committee. The plaintiff demurs to the plea.

"The question raised is whether the by-law set up in the plea is a bar to the present action. By-laws of a society are intended for the internal gov-

ernment of its affairs. When they are confined within this scope, courts have no jurisdiction or control over their administration. For example, courts cannot undertake to correct matters which only relate to discipline or procedure in such bodies. By-laws are, however, in the nature of a mutual contract, and to that extent the action of a society under them may be reviewed by a court to preserve personal rights, which involve something more than the mere formal action of the society, such as insurance, rights of property, or an illegal exercise of power. The by-law in this case raises the question whether the provision to submit to an arbitration which shall be final is binding on the plaintiff as a member of the society. It is a question involving a pecuniary interest which is termed by most cases as a property right. Upon this question there have been two lines of decision. On one side are those cases which hold that a person who becomes a member of a society thereby agrees to its by-laws so as to be bound by them to the extent of having assented to a tribunal whose decision is to be final, and hence not reviewable by a civil court; that such an agreement is not contrary to public policy, because by it such person has waived nothing which he had not the right and power to waive; and that such tribunal is constituted for the express purpose of settling the difference between members and the society without recourse to legal proceedings. Of this class of cases the following are examples: *Hembeau* v. *Great Camp, Knights of Maccabees,* 101 Mich. 161, 59 N. W. 417 [49 L. R. A. 592] 45 Am. St. Rep. 400; *Canfield* v. *Great Camp of Knights of Maccabees,* 87 Mich. 626, 49 N. W. 875 [13 L. R. A. 625] 24 Am. St. Rep. 186; *Osceola Tribe* v. *Schmidt,* 57 Md. 98. On the other side it is held that, where there is a contract to pay money, either by way of benefits or insurance, it is in the nature of a property right, which, like all other contracts, is within the jurisdiction of courts of law.

"We think that the stronger reason is with this class of cases. By this we do not mean that a member is free to come to the courts regardless of the by-laws of his society, but only that he is not in all

respects absolutely bound by them. Where, as we have said, the by-laws relate simply to matters of internal administration or of discipline, courts will not undertake to review them. Courts are not established for such a purpose. Also, where the by-laws amount to a condition precedent to a right of action, such as a proper opportunity to hear and examine a claim for the purpose of ascertaining the liability or the amount due, they must be followed before a court will hear a party who has failed thus to conform to his reasonable contract. This is a principle applicable to all contracts. A familiar illustration is found in contracts of insurance in provisions relating to notice, adjustment of loss, and the like; also statutory provisions requiring those who have claims against a city or town to present them for a certain time in order to allow opportunity for investigation. But where a person who has a right of action is deprived of his remedy, either by non-action or wrong action on the part of the society, or where by-laws impose conditions which would not be allowed to stand, under recognized rules of law, in other cases of contracts, such by-laws are invalid upon the ground that they operate to deprive a person of his remedy of recourse to the law, which is a common constitutional right.

"Among the conditions thus imposed, the one upon which this case arises has often been considered by courts, and that is in regard to a by-law which makes a finding by a committee or by arbitrators not simply a condition precedent to recovery, but a final and conclusive adjudication between the parties, and so a bar to an action. The by-law in question involves two conditions; one to submit future disputes to arbitration, and another to make the decision final. Both conditions are objectionable as a bar to a suit. . . . *The reason generally given is that it ousts the courts of jurisdiction, and so deprives a party of his rights . . . in a given case, when he knows the circumstances and the effect of his act, it is held to be contrary to public policy for one to bar himself in advance from a resort to the courts for some future controversy of which he can have no knowl-*

*edge at the time of the original agreement."* (Italics ours.)

So, also, in the cases of *Pearson* v. *Anderburg,* 28 Utah 495, 80 Pac. 307; *Daniher* v. *Grand Lodge,* 10 Utah 110, 37 Pac. 245; *Stephenson* v. *Piscataqua, etc.,* 54 Me. 55; *Whitney* v. *Nat. Masonic, etc.,* 52 Minn. 378, 54 N. W. 184; *Fox* v. *Masons, etc.,* 96 Wis. 390, 71 N. W. 363; *Zaremba* v. *International Harvester Corp.,* 162 Wis. 231, 155 N. W. 114; *Association* v. *Burr,* 44 Neb. 256, 62 N. W. 466.

The best reason, however, for the rule set forth in the cases above is to our mind even stronger than that relied upon in the Pepin case, *supra.* As is well stated by the Supreme Court of Indiana in *Supreme Council Catholic Ben. Legion* v. *Grove,* 176 Ind. 356, 36 L. R. A. (N. S.) 913, 96 N. E. 159:

"The reason of the rule lies deeper than the mere matter of power to submit to arbitration, *in the fact that it is entirely inconsistent with and repugnant to all notions of justice that one should be an arbitrator in his own case,* and that the laws of the land should be superseded, and the courts ousted of jurisdiction to interfere and enforce them by the very contract which is in question." (Italics ours.)

The question is one of first impression in this jurisdiction, and we are free to accept the rule most in accord with reason and justice. It seems to us the latter one is best supported by logic as well as authority. We are of the opinion that any by-law of an insurance association which provides that, in cases of dispute as to whether property rights have vested under policies issued by the association, the final and unappealable decision as to such rights shall be vested in the association or its officers or business representatives exclusively, is void as against public policy for two reasons: In the first place, because it attempts to oust the courts of the jurisdiction vested in them by the laws of the land to

determine controversies regarding property, by a contract made in advance of any controversy having arisen; and, second, and even more important, because it also provides in advance that the arbitration or determination shall be left to one of the interested parties to the contract. One of the oldest and most salutary maxims of law is that no man shall be a judge in his own cause, and any agreement to the contrary in cases like this, made in advance of the actual issue arising, is both inequitable and illegal.

The judgment of the superior court of Cochise county is affirmed.

McALISTER, C. J., and ROSS, J., concur.