BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN *v.* SIMMONS.

4-3641

Opinion delivered February 25, 1935.

*Wm. F. Kirsch* and *Maurice Cathey,* for appellant.
*Jeff Bratton,* for appellee.

BUTLER, J.   In our opinion handed down December 10, 1934, we held that the by-laws invoked by the appellant in its contention that controversies arising between members and the Brotherhood must first be adjudicated by the association before appeal to the court, related to controversies arising out of questions of policy, doctrine or discipline and had no application to claims arising out of contracts.  It was upon this theory that our opinion was based.  A more careful examination of the provisions of the by-laws convinces us that we were in error, and that they were, in fact, intended (those relating to the pursuit of remedies by appeal to tribunals within the order) to apply to all controversies, both those relating to questions of policy and discipline, and to claims growing out of contracts.  For that reason the original opinion is withdrawn, and we proceed to a re-examination of this controversy.

It is conceded by the secretary-treasurer of the appellant association, Mr. Phillips, and by counsel for the association in their brief, that Lobie L. Simmons became a member of the association in 1922, and was at the time of his alleged disability, and now is, a member in good standing; that he has been at all times a member of the beneficiary department, and a member of the disability benefit department since its creation, and that he has regularly paid his dues in these departments.  It is likewise undisputed that at one time he was a member of

the pension department which is wholly independent of the beneficiary and disability benefit departments; that he ceased to be a member of the pension department for failure to pay his assessment for the month of November, 1931, which had the result of automatically expelling him from that department on November 2 of that year.

The proof is not in dispute, and conclusively shows that Lobie L. Simmons is now and has been totally and permanently disabled within the meaning of the by-laws of appellant association from and after November 21, 1931. On the last-mentioned date he suffered an accident which resulted in severe injuries to the ribs and vertebrae. Before he had recovered from these injuries, he suffered an attack of angina pectoris, when it was discovered that he had an organic disease of the heart which permanently and totally disabled him from performing and from "following all occupations, especially those that require any exertion or muscular effort." He was examined by a physician twice at St. Louis, and by the physician in the Mayo's Clinic at Rochester, Minnesota. He was also examined by four other physicians, the result of all these examinations being that he was suffering from a disease of the heart with complications which totally and permanently unfitted him from pursuing any gainful occupation. Following these examinations, it is undisputed that Lobie Simmons filed three separate claims for disability benefits, and that at no time did he file a claim for compensation from any other fund. The first claim was filed in March, 1932, the second in September, 1932, and another in November following. These claims were accompanied by reports of physicians who had examined him. At the request of the association, Simmons gave it permission to examine the records in the hospital relating to his physical condition. The record does not show what action, if any, was taken on the first claims filed, and appellant has failed to disclose what information, if any, it received from the examination of the hospital records.

On December 21, 1932, Mr. Albert Phillips, general secretary-treasurer of the association, residing in Cleve-

land, Ohio, wrote to Simmons advising him: "The evidence obtained in connection with your disability benefit claim does not indicate that you are totally and permanently disabled according to the provision of the law, and it is therefore necessary for me to disapprove your claim." (Signed: A. Phillips). Thereafter, without taking any further action within the association, Simmons brought this suit on February 18, 1933. In that complaint he based his right to recover on a pension certificate issued on December 19, 1928, quoting a provision of the by-laws of the association giving right to compensation from the "Relief Department." He later filed an amendment to this complaint claiming compensation under section 8, article 7, and section 23, article 8 of the constitution and by-laws of the association. Demurrers were interposed to the complaint as amended, and a substituted amendment to the complaint was filed setting out in full section 8, article 7 and section 23, article 8, *supra*. Section 8 of article 7 provided for the establishment, on and from the 1st day of October, 1931, of a disability fund. It provided for an assessment of $1.25 per month on all members in good standing in the beneficiary or mutual departments giving to said members, as long as they remained in good standing, the benefits set out in section 23 of article 8. That section defined "total and permanent disability" to be bodily incapacity as "shall wholly and permanently prevent a member from engaging in any occupation, profession or business, or from performing or directing any work for remuneration or profit." It also provided that a member in good standing, who is adjudged by the general secretary and treasurer to be totally and permanently disabled (except on account of consumption of the lungs), to be entitled to receive $50 per month until he is adjudged no longer entitled to benefits.

The demurrers were overruled. A motion requiring the complaint to be made more definite and certain was filed, which was also overruled, and the association answered denying the material allegations of the complaint, and setting up as affirmative defense that all contracts made by it are subject to the constitution, rules

and by-laws of the association of which plaintiff was member, and that, by reason of such membership, he became subject to, and bound by, said constitution and by-laws. The answer pleaded section 7A of article 17, which is as follows:

"No member or subordinate lodge of the Brotherhood shall resort to the civil courts to correct or redress any alleged grievance or wrong, or to secure any alleged rights from or against any member, subordinate lodge or the organization, until such member or lodge shall first have exhausted all remedy by appeal, provided by the laws of the Brotherhood for the settlement and disposition of any such rights, grievances or wrongs."

The association alleged that the plaintiff had neglected and refused to comply with this provision prior to the suit. The answer was amended by pleading section 18 of article 8 of the constitution which is as follows: "If a claim has been disapproved by the general secretary and treasurer, and the applicant is dissatisfied and desires to bring action against the Brotherhood, he shall first exhaust all remedy by appeal provided by the laws of the Brotherhood, and thereafter he shall, before bringing action, give the general secretary and treasurer thirty (30) days' notice in writing of his intention to bring such action." It was alleged that plaintiff had failed to comply with this provision prior to the bringing of the suit.

Evidence was adduced which established the facts heretofore narrated, and the court found in favor of the plaintiff adjudging that he recover $995.12, being the $50 monthly payments as provided in the by-laws relating to disability benefits from October, 1932, to April, 1934, both inclusive. The court further decreed that beginning with the month of May, 1934, the defendant association should continue to make the payments of $50 per month for each month thereafter during the life of plaintiff, or so long as he was totally and permanently disabled.

This appeal seeks a reversal of the decree on the grounds: (1) That the demurrers and motion were improperly overruled, and (2) because the appellee failed

to comply with the conditions of the by-laws which, it is contended, are conditions precedent to the bringing of his action.

■ The demurrers were properly overruled. It is evident, from the amended and substituted complaint, that the appellee based his right to recover on the disability fund provided for in the constitution, which he quoted at length in his substituted amendment to the complaint, and that under those provisions he stated a cause of action. It is said that the complaint does not allege that appellee is a member in good standing. It does not so state in so many words, but in legal effect it does under the doctrine that pleadings shall be liberally construed in favor of the pleader. Neither did the court err in refusing to require the appellee to elect. He had already stated his position clearly in his pleading last filed, and the case was developed solely on his final amendment.

■ Section 5 of article 2 of the constitution prescribes the duties of the general secretary and treasurer. Subdivision (gg) of that section provides as follows: "He shall have a physical examination made of all applicants for total disability or disability benefit allowance, except for amputation or enucleation of eye, when said application, as filed, shows the member to be totally disabled and entitled to an examination in accordance with the constitution."

Subdivision (hh) provides: "He shall set a time and place for the examination of an applicant for total disability or disability benefit allowance, and shall notify applicant of such time and place, advising him to present himself prepared to undergo an examination."

Subdivision (ii) provides: "He shall, as soon as possible, after examination of the applicant has been made, approve or disapprove payment of disability claim or claim for disability benefit allowance in accordance with the findings as to whether or not the applicant is afflicted with any of the conditions specified in article 8, section 14, paragraph (a); Sec. 23, paragraph (b); or Sec. 23, paragraph (e)."

Subdivision (jj) provides: "He shall advise applicants, whose applications for beneficiary certificates have been rejected, reason for such rejection."

It is the opinion of the general secretary and treasurer of the association, and so testified to by him, that the applicable by-law for an appeal from his decision on a claim for total disability is found in section 5 of article 17. Counsel for the association differ with the secretary and treasurer, and cite in their brief, as the applicable law, subdivision (11) of section 5, article 2, which is as follows: "In all cases where applications concerning participation in any of the insurance, or pension departments, or for benefits or allowances from such departments, are rejected, the applicant or lodge of which he is a member shall have the right of appeal to the international president and the board of directors, the decision of the board of directors to be final."

Section 23 of article 8, provides for the payment of disability benefits out of the fund established by section 8 (a), article 7. In subdivision (d) of said section 23, it is provided that the question of total and permanent disability shall be determined by the general secretary and treasurer, and subdivision (f) of that section provides: "Members shall have the right to appeal from a decision of the general secretary and treasurer as provided in article 2, section 5, subdivision (11)."

It is evident that the general secretary-treasurer was mistaken in his opinion as to the applicable law, and counsel for the association are correct.

Section (f) 23, article 8, merely gives the member the right to appeal. Nothing whatsoever is said concerning whether that appeal is or is not essential. The same thing is true of article 2, section 5 (11), for that provision does not even purport to discuss the necessity of such an appeal. The necessity for such an appeal is a subject obviously left to be covered by other provisions of the constitution. Counsel contend that this is found in article 17, section 7. We do not think that article 17, section 7, deals with appeals from the decisions of the secretary-treasurer on the question of total and permanent disability, and the right of a member to recover

therefor. That section is as follows: "No member or subordinate lodge of the Brotherhood shall resort to the civil courts to correct or redress any alleged grievance or wrong, or to secure any alleged rights from or against any member, subordinate lodge or the organization, until such member or lodge shall first have exhausted all remedy by appeal, provided by the laws of the Brotherhood for the settlement and disposition of any such rights, grievances or wrongs."

As the question of appeal from the decision of the secretary-treasurer on applications for total disability allowance, and for disability benefit allowance had been previously dealt with in article 8, section 23 (f), and article 2, section 5 (11), *supra,* section 7 of article 17 must refer to unconnected matters. The principal object of the Brotherhood was doubtless to promote a spirit of comradeship among its members, so that they might be able to, and would, present a united front on matters of vital interest to them as firemen and enginemen—such as, length of hours they were required to work, the wages they should receive, and the methods to be employed to effectuate these primary purposes of the Brotherhood—and the "grievance, wrong and rights" mentioned in section 7 of article 17 doubtless refer to those growing out of or suffered in carrying out these primary purposes, and the appeal is only from decisions relating to these matters, and have no relation to claims arising through some of the insurance departments of the Brotherhood. Hence the contention of appellant in the instant case, on the second ground urged, must be founded on article 2, section 5 (11), and the provision of article 8, section 18, set up in the amendment to the answer and quoted above, providing that if a claim has been disapproved by the general secretary-treasurer, the claimant shall first exhaust all remedy by appeal provided by the laws of the association, and before bringing action shall give the general secretary-treasurer thirty days' notice in writing of his intention to institute such action. If there are other applicable constitutional provisions relating to appeals by claimants from the adverse decision of the general secretary-treasurer, we

have failed to discover them by an independent examination of the constitution, nor have we been advised of any such by counsel.

Counsel for appellant state that "the Brotherhood" is an unincorporated association organized and existing under the laws of the State of Ohio, and that the admitted fact is that no appeal was prosecuted from the decision of the secretary-treasurer denying liability. It is insisted that the laws of the State of Ohio, as declared by its courts, require a reversal and dismissal of appellee's cause of action, or, rather it is the contention that, under the decisions of the courts of that State, he had no cause of action which he might maintain until he had exhausted his remedies within the order. The case of *Myers* v. *Jenkins,* 63 Ohio St. 101, 57 N. E. 1089, is cited as conclusive of this contention. In that case, a member of Olive Branch Lodge No. 34, Independent Order of Odd Fellows, one Lucas, brought suit against the lodge for disability benefits, and recovered a judgment in the trial court. On appeal the case was reversed and remanded on the ground that the claimant had not exhausted his remedies within the order before invoking the jurisdiction of the court. The applicable constitution and by-laws are not quoted in the opinion, but it appears from the discussion of the case that the local lodge, and not the "Order," was liable for payment of the claim; that, where there was a claim for such benefits, a committee was first appointed—one member selected by the claimant, one by the lodge, and the third selected by these two. This committee examined into the claim and reported its finding and recommendation to the lodge. In case the lodge should deny the claim, provisions were made for appeal to what is known as "the Grand Committee," consisting of all the members in a district who had at any time held the office of "Noble Grand" in any lodge, and still were in good standing. Such members are known as "Past Grands." The past grands of the lodge to which the claimant belonged are, by the laws of the order, excluded from participating in the proceedings of the grand committee on appeal. Therefore, the grand committee for the trial of the appeal consists of

past grands of the districts other than the past grands of the lodge to which the claimant belonged. The grand committee holds regular meetings, and special meetings may be called by the district deputy grand master when he deems it necessary, or when he shall be requested to do so by five past grands in good standing. From the action of the grand committee, an appeal may be taken to the grand lodge, or error may be prosecuted thereto. The laws provide that where the district deputy grand master fails to perform his duty, the attention of the grand master may be called to such failure, or a complaint in the nature of a grievance may be filed against him in the grand lodge, and he may be compelled to perform his duty. From any decision of the grand lodge, where it votes to permit an appeal, such may be taken to the Sovereign Grand Lodge. In the application for membership in the local lodge, the member obligates himself to abide by the laws governing the grand and local lodges, and to seek "his remedy for all rights on account of said membership, or connection therewith, in the tribunals of the Order only, without resorting for their enforcement in any court, or for any purpose to the civil courts."

If it be conceded, as claimed, that the Brotherhood was formed under the laws of Ohio, and that the decisions of the courts of that State, construing and upholding the validity of any particular part of its Constitution, is binding upon this court under the full faith and credit clause of the United States Constitution, we are of the opinion that the case cited has not decided the questions presented in the case at bar, and is therefore not conclusive of the contention of the appellant. It does not appear that the provisions of the constitution of the Independent Order of Odd Fellows, relating to appeals, are the same or similar to those here involved. It is clear that they are different, and, in addition to granting the right of appeal, map out a course of procedure whereby that right may be made effective.

There is a further and vital distinction. In the cited case the claim for liability was against the local lodge, and the order itself as such was not responsible.

From the appellate tribunal, members of the local lodge against which the claim was made were excluded, so that the claimant might present his cause to a disinterested tribunal. In the case at bar, it is the Brotherhood against which the claim is made, and not the local lodge, and it is its principal officers who are clothed with the authority to hear and determine the validity of the claim. No principle is more just or of wider application than that "no man can be a judge in his own cause," and the provisions just noted are violative of that principle.

The by-laws considered in the Myers case, *supra,* provided for appeals to a committee holding stated meetings, and provision is made for a transcript of the proceedings to the appellate tribunal. It is also provided that the trial on appeal "shall be had within six months thereafter." The constitution of the Brotherhood makes no such provision, prescribes no procedure, and leaves it to the unfettered discretion of the appellate tribunal to say when it will hear, and when determine, appellant's appeal.

By the constitution of the brotherhood beneficiary and disability benefits are inter-related, and not independent, as insisted by the general secretary-treasurer in his testimony. The members of the brotherhood have no option in the matter, but are required to become members of the beneficiary department (art. 7, sec. 1-b, secs. 2 and 5, and sec. 7a), and must also become members of the disability benefit department (art. 7, sec. 8-c). In addition to the regular dues and special assessments, the members are required to pay substantial sums each month into the beneficiary and the disability benefit departments (art. 12, sec. 54, and art. 7, sec. 8-b of the Constitution).

Since these insurance features are compulsory on the members, good faith and fair dealing require that the means whereby the beneficiary or disability benefits may be obtained shall be set out, so that the ordinary man may first find them, and be so framed as to provide for an easily understandable method of procedure by which claims may be presented, and appeals prosecuted

to an impartial tribunal to be determined by it within a reasonable time limit.

When the constitution is examined, it is found to be contained in a booklet approximately 4x5½ inches of 340 pages printed in brevier type. Various provisions for appeals are made, and which are applicable in a given case is a question left to the judgment of the inquirer. This question is not always readily answered, as will be seen by the opinion of the secretary-treasurer, and that of counsel, as to the applicable law. It is not remarkable, therefore, that a member would fail to discover the law under which he must proceed, or that, when discovered, he would fail to rightly interpret it, or, when discovered and understood, that he would be uncertain how to proceed.

Appellant brotherhood, in this way or that, ask why the member did not proceed to exhaust his remedies within the brotherhood. The answer is obvious. He did not know how, and no method for guidance was given him. This being the case, the member is remitted to his own industry and acumen to discover the law making the appeal "a necessity," and to map out his course of procedure.

With the provisions for appeal so meager, and no mode of procedure defined as to how the appeal may be prosecuted or when it may be decided, the conclusion is inescapable that the provision requiring a member to exhaust his remedies within the brotherhood before resorting to the courts is unreasonable and void. When, therefore, the appellee presented his claim to the general secretary-treasurer, accompanied by reports showing conclusively his total and permanent disability, and when, at the request of the brotherhood, he gave permission for an examination by it of the records at the hospital where he had received treatment, and the secretary-treasurer disallowed his claim, his right to invoke the jurisdiction of the courts undoubtedly exists.

■ The decree appealed from provides for judgment for the amount accrued under the terms of the disability benefit provisions, which judgment is correct. The decree further provides that the appellee have judgment

for the sum of $50 per month, beginning with the month of May, 1934, and continuing such each month thereafter during the life of the appellee, or until the total and permanent disability now suffered by him ceased to exist.

The decree for the unaccrued monthly payments is thus based upon a contingency, and is therefore uncertain. Judgments must be certain. Their validity and binding force must rest upon facts existing at the time of rendition. Judgments take their validity from the action of the court based on existing facts, and not from what may happen in the future after the court has rendered its judgment. *Consolidated, etc., Co.* v. *Huff*, 62 Kan. 405, 63 Pac. 642; *Puette* v. *Mull*, 175 N. C. 535, 95 S. E. 881; *Johnson* v. *Carver*, 175 Pa. 200, 34 Atl. 627.

The decree is modified, so as to eliminate sums accruing after May, 1934, without prejudice, however, to the appellee to bring any further action to recover the payments as they accrue. As modified, the decree should be, and is, hereby affirmed.