Ira A. Wallace, Appellant, v. Brotherhood of Locomotive Firemen and Enginemen, Appellee.

No. 45602.

October 14, 1941.

Rehearing Denied January 23, 1942.

Gilmore, Moon & Bannister, for appellant.

Roberts & Roberts and Grimm, Elliott, Shuttleworth & Ingersoll, for appellee.

Mitchell, J.—Ira Wallace commenced this action at law against the Brotherhood of Locomotive Firemen and Enginemen to recover for permanent disability benefits under the terms of a beneficiary certificate held by him. The defendant filed answer in which it denied that Wallace was totally and permanently disabled as defined in the contract, that he failed to exhaust the remedies provided in the contract to be pursued by him within the order in case an application for disability benefits is rejected, and that the exhaustion of these remedies is a condition precedent to the prosecution of an action at law.

Plaintiff's evidence tends to show that defendant is a fraternal insurance association with principal office and place of business at Cleveland, Ohio. On the 23d day of August, 1927, for a valuable consideration paid by plaintiff, the defendant made, executed and delivered to him its Beneficiary Certificate D398033 witnessing that he is a member of defendant Brotherhood and entitled to all the rights, privileges, and benefits of a member. That included in the contract of said certificate, as a part thereof, is the constitution of the defendant as of the date of issuance of the certificate or as thereafter altered and amended.

That the constitution in effect from and after January 1, 1932, to December 31, 1937, is the law of the Brotherhood constituting part of the contract sued upon during the period involved in this action. The constitution, Exhibit P-8, in the trial court has been certified to the supreme court as a part of the record.

The constitution provides that a member in good standing in the Disability Fund of the Beneficiary Department, who is adjudged by the General Secretary and Treasurer to be totally and permanently disabled, shall be entitled to receive fifty dollars for each calendar month from the date of application until his death or until he is adjudged no longer entitled to benefit.

Total and permanent disability is defined in the constitution as "such a state of bodily incapacity as shall wholly and permanently prevent a member from engaging in any occupation, profession or business or from performing or directing any work for remuneration or profit".

On or about the 29th day of July, 1937, the plaintiff suffered a cerebral hemorrhage not of traumatic origin. He was confined in the hospital for a period of 19 days. He suffered paralysis of the right arm and a loss of part of his mental faculties, including memory, ability to concentrate and emotional stability.

On October 9, 1937, defendant received at its office in Cleveland, Ohio, plaintiff's application for disability benefit, on form provided by Grand Lodge of defendant and accompanied by report of physical examination.

On October 26, 1937, A. Phillips, General Secretary and Treasurer of defendant, advised plaintiff by letter "that approval of an allowance from the disability benefit fund could not be authorized at this time".

On December 4, 1937, Mr. Phillips, upon inquiry at request of plaintiff, explained his action in a letter to Wm. N. Whitehouse, M. D., and stated "it was the opinion of this office that not enough time had elapsed in which to definitely determine the question of total and permanent disability."

The constitution provides that in case application for benefits or allowances from insurance departments are rejected by General Secretary and Treasurer, the applicant has a right of appeal to the International President and that such appeal shall be made within ninety days from the date of decision. "Appeals

not made within ninety days shall not be entertained, unless it is clearly shown that the cause of such delay was no fault of the member making the appeal''.

At the close of plaintiff's evidence the defendant made a motion for a directed verdict, as the grounds of same will be discussed later they will not be set out at this time. The motion to direct was sustained, and the plaintiff has appealed. ·

■■■■ It is first argued that the trial court erred in sustaining the first three counts of appellee's motion for a directed verdict, holding that Wallace had failed to establish that he was in such a state of bodily incapacity as to wholly and permanently prevent him from engaging in any occupation, profession or business or from performing or directing any work for remuneration or profit as is provided in Article 8, Section 23 (a) of the constitution.

In the case of Garden v. New England Mutual Life Ins. Co., 218 Iowa 1094, 1104, 254 N. W. 287, 292, this court said:

"The word 'permanent' * * * does not mean forever. It does not embrace the idea of absolute perpetuity, or lasting forever, or existing forever. It means [for the time being, or] for an indefinite and undeterminable period.''

Permanent disability means a disability that is lasting rather than temporary. The word permanent means ''for an indefinite and undeterminable period.'' It does not embrace the idea of absolute perpetuity.

If a ''permanent disability'' must be one that is to exist for life, incurable, without possible hope of recovery during the insured's lifetime, then in most cases of total disability, the liability of the insurer may not be determined until the death of the insured. There are few afflictions which medical science will admit to be absolutely fixed, incurable.

There are, however, many afflictions which are presumably permanent, that is, they might not be cured or improved before death and they are continuing rather than temporary. Such afflictions may be said to be probably beyond hope of improvement. They are lasting for an indefinite or indeterminable period. The courts have said that these are ''permanent'' disabilities within the meaning of insurance agreements using that

term.  To hold otherwise would be to allow the insurer, in practically every case to avoid liability until the insured had finally closed his case by death.  Such construction would convert a disability policy into a life policy.  This is not the purpose of disability insurance which is designed to sustain the disabled person during his years of incapacity to earn.

A disability agreement using the term "permanent" disability together with a provision to the effect that payments shall cease if recovery or improvement in the "permanent" disability occurs, or together with a provision for payment "during such disability", or together with a provision that payments shall continue "until disabled member's death or until he is adjudged no longer entitled to benefit" must be construed to cover such disability as is presumed permanent rather than absolutely permanent.

Article 8, Sec. 23 (d) of appellee's constitution provides payment to disabled member:

"until the disabled member's death, or until he is adjudged no longer entitled to benefits."

This court has said that such a provision as contained in the appellee's constitution, for the termination of payments before death means that it is placed there for the protection of the insurer and must be construed to qualify the meaning of the word "permanent" to fix liability, though the disability may be curable, so long as the company is protected in case the insured recovers.

In Kurth v. Continental Life Ins. Co., 211 Iowa 736, 739, 234 N. W. 201, 202, the court observed the provision of a disability policy to the effect that:

" 'If it appears that the insured has so far recovered as to be able to engage in any gainful occupation, the company's obligation * * * shall cease.' "

The court said:

"By the insertion of the foregoing clause in the contract, it is obvious that the disability by which the benefits may accrue and become obligations of the company is not absolutely expected to be absolutely permanent and absolutely continuous and

to absolutely prevent the insured during his after lifetime from engaging in any gainful occupation; because this insertion was intended to govern when and if such presumably permanent disability might be removed by some means or other, and the company desired what benefits it might have by reason of such removal.''

This record shows that Ira Wallace was employed as a railroad engineer. That in July 1937, he suffered from a cerebral hemorrhage, that he was at that time 56 years of age. That he was unconscious for several days. That his right arm and side of his body was affected. That his doctor testified that he was mentally incompetent. That at the time of the trial, which took place in 1940, three years after the ''stroke'' which he suffered, that Wallace was unable to perform labor of any kind. The appellee offered no evidence. In face of this record, it was a question for the jury to say whether or not appellant was totally and permanently disabled within the meaning of the policy.

It is next contended that the lower court erred in sustaining Ground 5 of the motion for direct verdict.

Ground 5 is as follows:

''(5) That it affirmatively appears from the provisions of Article 8, Section 23, sub-paragraph 'd', on page 96 of Exhibit P-8, being the constitution of the defendant, and from said constitution as a whole, that it is a condition precedent to any right of recovery for disability benefits as provided for solely and alone by the provisions of Section 23 of Article 8, that the claimant or member seeking said benefits be adjudged by the General Secretary and Treasurer as totally and permanently disabled, as provided in sub-paragraph 'a' of said Section 23, of said Article 8. That the record evidence wholly fails to establish that the plaintiff has ever been adjudged by the General Secretary and Treasurer of the defendant to be so totally and permanently disabled, and on the contrary it affirmatively appears he was adjudged not to be so permanently and totally disabled.''

Appellee argues that Article 8, Section 23 ('d) of the constitution of the Brotherhood provides that disability benefits will be extended to a member who is adjudged by the General Secre-

tary and Treasurer to be totally and permanently disabled. That the decision of the Secretary and Treasurer is final. Appellee says, we quote, "Benefits are not extended to a member who is totally and permanently disabled, or whom a jury may find to be totally and permanently disabled, but only to one who is adjudged by the General Secretary and Treasurer to be so disabled."

If the provision in the constitution is construed as appellee contends, then it is void as far as it attempts to oust jurisdiction of the courts.

The Iowa court in the case of Prader v. National Masonic Acc. Assn., 95 Iowa 149, 161, 63 N. W. 601, 605, said:

" * * * a general provision by which the parties to an agreement in terms bind themselves to submit to arbitration all matters of dispute which may thereafter arise, and making the arbitration final, will not deprive the courts of their appropriate jurisdiction, nor be enforced by them."

In Goodwin v. Mut. Ins. Co., 118 Iowa 601, 606, 92 N. W. 894, 895, we said:

" * * * a litigant cannot be expected to consent that his case shall be tried to his antagonist in person or by agent."

"One of the oldest and most salutary maxims of law is that no man shall be a judge in his own cause." Employee's Ben. Association v. Johns, 30 Ariz. 609, 620, 249 P. 764, 767, 51 A. L. R. 1414.

"The judicial mind is so strongly against the propriety of allowing one of the parties * * *, to be judge or arbitrator in its own case, that even a strained interpretation will be resorted to if necessary to avoid that result." Railway Conductor's Benefit Assn. v. Robinson, 147 Ill. 138, 159, 35 N. E. 168, 176.

The reason for the above-quoted rule is sound. The courts are open for the redress of injury done to person or property. To permit parties to agree before a dispute arises to submit their differences to the adjudication of one of the parties to the agreement is against public policy. Appellee rather agrees with this proposition but claims it has no application to a mutual benefit certificate which creates no liability, it says upon the occur-

rence of the disability but only upon the approval of the claim by the appropriate officer of the company. With this we cannot agree, for it gives to some officer of the defendant company a right to say whether or not the appellant can recover. It gives to the appellee the right to be judge in its own case. This is against public policy. The practice of permitting one of the parties to a dispute to be the judge, is just as vicious, whether one of the parties is a mutual benefit society or not.

Division 6 of appellee's motion for a directed verdict was that the General Secretary and Treasurer rejected Wallace's application for disability benefits and that he failed to exhaust his remedies by way of appeal within the Brotherhood by appealing to the International President within ninety days.

Appellant on or about the 22d day of September, 1937, submitted to the General Secretary and Treasurer, through the Ottumwa Lodge, No. 41, on the proper forms his application for disability benefit allowances. On the 26th of October, 1937, Mr. Phillips, the General Secretary wrote the following letter to Mr. Wallace:

"Mr. Ira A. Wallace, M-41                    October 26, 1937
137 S. Elm Street,
Ottumwa, Iowa
Dear Sir and Brother:

"All the papers in connection with your case are before me and I have reviewed the entire record, particularly the medical evidence presented, with our medical advisor in order to ascertain if your disability is such as to bring you within the scope of the law governing the disability benefit department.

"This law, you will recall, provides that payment shall be made to a member only in the event his disability is such as to wholly and permanently prevent him from engaging in any occupation, profession or business or from performing or directing any work for remuneration or profit. In this instance it is not shown that you are so disabled and I regret to advise that approval of an allowance from the disability benefit fund could not be authorized at this time.

"Fraternally yours,
"A. Phillips"

The letter of the General Secretary does not definitely deny the claim. He says "that approval of an allowance from the disability benefit fund could not be authorized at this time".

That Wallace had a right to believe that it was not a rejection of his claim is clearly shown by the fact, that after Wallace received the above-quoted letter he went with his wife to visit Dr. Whitehouse, his medical adviser, and Dr. Whitehouse wrote a letter to an officer of the Brotherhood. On December 4, 1937, Mr. Phillips, the General Secretary answered the doctor's letter, we quote same:

"Dr. William Whitehouse,                     December 4, 1937
Ottumwa,
Iowa
Dear Doctor:
    "Your letter of November 27 addressed to the International President in connection with the case of Mr. I. A. Wallace has been referred to me for reply.

    "We fully appreciate your position in the matter, and as a brief explanation of our action we call your attention to the fact that the cerebral accident occurred July 29, since which time Mr. Wallace has received constant and proper medical attention. We believe you will agree with us that the degree of permanent disability which may result in a case of this character may not be determined until a sufficient time has elapsed in which to observe the improvement, if any, which may occur. In this particular instance the form D-3 (Report of Physical Examination) was completed on September 22, less than two months following the onset of Mr. Wallace's disability, and it was the opinion of this office that not enough time had elapsed in which to definitely determine the question of total and permanent disability.

    "Trusting the above satisfactorily explains our position, I am

                          "Yours very truly,
                          "A. Phillips"

Again the General Secretary says "that not enough time had elapsed in which to definitely determine the question of total and permanent disability."

The claim was not rejected. The General Secretary had not had enough time to definitely determine. Certainly Wallace, suffering as he was from the effects of a "stroke", his wife who was assisting him, and the Doctor who was his medical adviser, had a right to believe that the claim was not rejected; that the General Secretary was still considering it.

The General Secretary knew how to reject a claim in the case of Brotherhood of L. F. & E. v. Simmons, 190 Ark. 480, 483, 79 S. W. 2d 419, 420, a case in which the appellee in this case was sued on a similar policy. Mr. Phillips, the same person who wrote the letters to Wallace and Dr. Whitehouse, wrote a letter disapproving Simmons' claim. We quote from same:

"The evidence obtained in connection with your disability * * * does not indicate that you are totally and permanently disabled according to the provision of the law, and it is therefore necessary for me to disapprove your claim."

This was an unqualified disapproval. Entirely different from the one in the case at bar, for in the letter of October 26th, he said he was unable to definitely determine the question of total and permanent disability. If he was unable to definitely determine that question, then he could not reject Wallace's claim.

On July 18, 1938, Wallace employed attorneys, who wrote Mr. Phillips asking him to inform them whether the claim would be approved or disapproved.

On July 22, 1938, Mr. Phillips wrote the attorneys for appellant stating to them that the Wallace claim "was disapproved on October 14, 1937."

Wallace immediately appealed to the President of the Brotherhood from the decision of the General Secretary and Treasurer disapproving his claim. The President replied that the disapproval was dated October 26, 1937, and that the appeal was not made within 90 days as provided by the constitution.

With this we cannot agree. The first definite disapproval of Mr. Wallace's claim was on July 22, 1938, and within the 90 days Wallace perfected his appeal in proper form to the President of the Brotherhood.

Finally it is argued that Wallace failed to appeal to

the Board of Directors from the ruling by the President disapproving his claim. That the constitution of the order required him to do so.

We have been furnished with a copy of the constitution, it contains 348 pages of printed matter, but nowhere in the constitution (at least the writer of this opinion hasn't been able to find it) does it say how an appeal to the Board of Directors should be made. The appellant's attorneys were unable to ascertain the proper procedure, and so they wrote a letter to the General Secretary asking how to proceed and he wrote back referring them to the constitution.

It is true that in the case of Ater v. Mutual Benefit Dept., 222 Iowa 1390, 271 N. W. 517, this court held that provisions of a beneficial society and the exhaustion of the remedies therein provided are valid, but it also says they must be reasonable.

In the Simmons case, 190 Ark. 480, 79 S. W. 2d 419, the Arkansas court reviews the constitution of the appellee, and sets out that the provisions for appeal are so meager and no mode of procedure defined as to how the appeal may be prosecuted, that the provision requiring a member to do so before suing is unreasonable.

In the case at bar the appellant wrote the General Secretary for instructions how to appeal, and the only reply was to refer him to the constitution.

This record shows that the appellant has done everything in his power to follow the rules prescribed by the appellee Brotherhood. If mutual benefit societies desire to have their members exhaust the remedies within the society, they should set out definite procedure to be followed, not simply refer them to a constitution of 348 pages.

Some other questions are argued, all of which have been considered. A motion to dismiss the appeal submitted with the case is overruled.—Reversed and remanded.

CHIEF JUSTICE and all JUSTICES concur.