**JOSEPH L. WILMOTTE &
CO., Appellee,**

v.

**ROSENMAN BROS., a/k/a Rosenman Brothers, Schwartz Enterprises, Inc., d/b/a Rosenman Bros., Appellant.**

No. 2–58870.

Supreme Court of Iowa.

Oct. 19, 1977.

As Amended Nov. 8, 1977.

Rehearing Denied Nov. 17, 1977.

Bailey C. Webber, Ottumwa, for appellant.

Barnes, Schlegel & Walter, Ottumwa, for appellee.

Heard by MOORE, C. J., and MASON, LeGRAND, REES and UHLENHOPP, JJ.

REES, Justice.

This is an appeal from the order and decree of the District Court of Wapello County, establishing and confirming a judgment in favor of plaintiff and against defendant entered by a Division of the Supreme Court of the State of New York, which judgment was based on an arbitration award against the defendant. We find no reversible error and affirm the trial court.

In August of 1968 the defendant, Schwartz Enterprises, Inc., d/b/a Rosenman Bros., placed an order for steel products with Edgar A. Baer, a steel broker of New Orleans. Baer, in turn, placed the order with plaintiff, a New York corporation. Acknowledgments of the order were sent by plaintiff to the defendant at defendant's Ottumwa, Iowa, address, and in due course the acknowledgments of the order with the confirmation of defendant by and through defendant's agent, L. J. Lynn, were returned to plaintiff. The record discloses Lynn was at all material times an employee of the defendant and was authorized to execute the confirmations of the orders.

In all, five acknowledgment documents were sent to the defendant from plaintiff, all of which were signed by Lynn and returned. On the top of the front of each of the acknowledgment documents the following language appeared: "We thank you for your above-mentioned order, placed with us through Edgar A. Baer, and are pleased to confirm having booked for your account, *subject to the following conditions of sales shown on the reverse side,* the following material." (italics ours). Then follows a description of certain elements of the material ordered. On the reverse side referred to there were 11 general conditions of sale, and paragraph 10 reads as follows: "Any controversy or claim arising out of or related to this order and its acceptance shall be settled by arbitration in accordance with the rules, then obtaining, of the American Arbitration Association; and judgment may be entered upon the award rendered in the highest court of the forum, State or Federal."

Shipment of the several elements of the orders under the contracts of sale was made in due course to the defendant's yards in Ottumwa, and after delivery of the several shipments defendant claimed certain portions of the material received at its yard were unacceptable and as a result only partial payment for the steel was made. Plaintiff disputed the contention that the material was unacceptable and demanded full payment for the steel.

On August 20, 1970 plaintiff filed a demand for arbitration with the American Arbitration Association (hereinafter AAA). In its demand plaintiff requested that the locale for arbitration be in New York City. A copy of the demand was sent to the defendant at Ottumwa, and on September 11, 1970 the defendant filed an answer to plaintiff's demand for arbitration, claiming that partial payment was in fact made and that there were deficiencies or defects in the materials delivered, and requested that Ottumwa be fixed as the locale for the arbitration hearing.

It is true that the acknowledgments of sale upon which defendant's confirmations by and through its agent Lynn appeared did not fix the locale for arbitration hearing. However, according to the terms of said documents, paragraph 10 of the conditions of sale provided that the rules of the AAA were to govern any arbitration of any dispute under the contract. The commercial arbitration rules of the AAA were admitted into the record on the trial of this case by stipulation of the parties and § 10 of said rules provides: "The parties may mutually agree on the locale where the arbitration is to be held. If the locale is not designated within seven days from the date of the filing the Demand or Submission, the AAA shall have the power to determine the locale. Its decision shall be final and binding. If any party requests that the hearing be held in a specific locale and the other party files no objection thereto within seven days after notice of the request, the locale shall be the one requested."

There was no agreement between the parties as to the locale for arbitration, and the AAA, pursuant to its powers under § 10 of its rules, fixed New York City as the locale for arbitration, and rejected defendant's request that the arbitration be had in Ottumwa.

On January 25, 1971 defendant filed with the AAA an instrument designated "withdrawal from arbitration" and thereafter did not participate in the arbitration proceedings. The proceedings on the dispute continued without defendant's participation in accordance with rule 29 of the Commercial Arbitration Rules which provides that unless the law provides to the contrary, the arbitration could proceed in the absence of any party who after due notice failed to be present or failed to obtain an adjournment. Arbitrators were chosen and a hearing on the dispute was held in accordance with AAA rules. On June 28, 1971 the arbitrators made an award to the plaintiff in the amount of $9,388.50 plus costs.

Following the award, the plaintiff instituted its action in a division of the Supreme Court of the State of New York and prayed that the court enforce the arbitration award that was made in its favor. Under § 39b of the AAA rules service of notice of or process in any arbitration proceedings or court action related thereto under the agreement for arbitration could be served by mail. The New York court directed that service of notice of the judicial proceedings be made by registered mail to the defendant which, in fact, was done. The defendant did not participate in the proceedings in the Supreme Court of New York and on September 30, 1971 judgment was entered by the New York court in favor of the plaintiff and against defendant on the arbitration award.

Suit was then instituted in the District Court of Wapello County, Iowa, for the establishment of the New York judgment as an enforceable judgment in Iowa. Defendant answered, denying any liability under the arbitration award or the New York judgment, and claimed that since the contracts between plaintiff and defendant for the purchase of the steel were Iowa contracts, Iowa law applied and that the agree-

ments to arbitrate were invalid since they did not comply with § 679.2 of the Code or that defendant's withdrawal from arbitration made the agreements to arbitrate a nullity since under Iowa common law a party to an arbitration agreement can withdraw at any time from an arbitration proceedings prior to the granting of an award. Also, defendant claimed that the arbitration agreement could not be enforced since the defendant had not agreed to it, contending that it had not expressly agreed to arbitrate and that the agent, Lynn, who had signed the contract for the defendant did not have the authority to enter into an arbitration agreement which would be binding on the defendant.

Defendant further contended by way of resistance to plaintiff's petition in the trial court that the defendant, through its board of directors, did not expressly agree to submit all of the disputes under the five contracts to arbitration and that the courts of the State of New York did not acquire *in personam* jurisdiction over the defendant since there was no physical presence in New York, the defendant never was engaged in business in New York and never expressly consented to be under the jurisdiction of the New York courts. While the formal introduction of the pertinent documents had been stipulated to by the parties, they were all objected to by the defendant at the time of their introduction based upon all of the defendant's contentions detailed above.

Defendant's objections to the evidence were overruled by the court, as was defendant's motion to dismiss. Trial court found defendant had consented to the provision for arbitration on the reverse of the acknowledgment and confirmation documents, and that defendant's agent, Lynn, was authorized to sign the documents. As the result of such acceptance, the trial court found the defendant had consented to the jurisdiction of the New York court by its agreement to arbitrate in the place chosen by the AAA if the parties had not agreed on the locale for arbitration. In the light of such findings, the trial court held the final judgment of the New York court was valid and binding on the defendant, and that

plaintiff was entitled to judgment in its favor for the amount of the arbitration award with interest and costs as confirmed by the New York court.

Defendant states the following issues for review which it contends necessitate a reversal of this case:

(1) The trial court erred when it overruled objections to the admission of documentary evidence of an arbitration clause, an arbitration award based thereon, and the New York judgment based on the arbitration award on the grounds that since they were Iowa contracts, Iowa law would be applied to determine their validity and would invalidate the arbitration clauses contained in the contracts since either the arbitration clauses were not made in compliance with § 679.2, The Code, since they were not acknowledged by the defendant or were not in the particular form as required by the cited section; or, since the defendant withdrew from the arbitration proceedings before an award was made, no arbitration award granted after defendant's withdrawal could be enforced under Iowa common law.

(2) The trial court erred in admitting into evidence over defendant's objections the printed provisions relating to arbitration appearing on the reverse side of the acknowledgment and confirmation documents in the light of the fact that the provisions on arbitration were not brought to the specific attention of the defendant or discussed by the respective parties.

(3) Trial court erred in permitting the introduction of evidence of the New York judgment over objections on the ground that the New York court did not have personal jurisdiction to enter judgment against the defendant on service of process by registered mail.

(4) The trial court erred in not sustaining the defendant's motion to dismiss and entering judgment for the defendant on the grounds all stated above.

■ I. In this law action, tried to the court, our review is not *de novo,* and the

findings of fact of the trial court are binding upon us if supported by substantial evidence. Rule 344(f)(1), Rules of Civil Procedure.

II. The first issue presented for resolution is whether there was consent by the defendant to the provisions of the acknowledgment and confirmation forms providing for arbitration. The defendant claimed there was no authorized consent on its part because plaintiff had not brought the provisions for arbitration on the reverse side of the acknowledgment and confirmation documents specifically to the defendant's attention, and that therefore there was no meeting of the minds with respect to the arbitration provisions of the contract. Defendant contends it should not be bound by a provision for arbitration on the reverse side of an acknowledgment or confirmation document unless there was express consent to such provision by the defendant.

Conversely, the plaintiff contends that the defendant in signing the documents containing the arbitration provision accepted the same and is bound by it.

The defendant cites and relies upon several cases to support its view that it did not give a binding consent to arbitration in this case. In *Albrecht Chemical Co. v. Anderson Trading Corp.*, 298 N.Y. 437, 84 N.E.2d 625 (1949), a buyer of dyestuffs tried to bind the seller to an arbitration provision on the buyer's purchase order form. The order form contained a provision that if the seller did not object to any of the terms in the order form within ten days, it would be deemed to have accepted the terms. The seller sent to the buyer another document which made no reference to any of the terms contained in buyer's purchase order, and the buyer contended the seller was bound by the arbitration provision, but the court held that a party could not bind another party to the terms of the contract by making silence a form of acceptance of contractual terms.

In *Arthur Philip Export Corp. v. Leathertone, Inc.*, 275 App.Div. 102, 87 N.Y.S.2d 665, a buyer of certain goods sent a seller a confirmation letter for a telegraphic order.

On the right hand side in the lower center of the face of the order form appeared the legend, "(See also back)." On the back side of the order form there was a provision for arbitration of disputes arising under the contract. The seller forwarded the goods with an invoice which did not contain any provision for arbitration, and a dispute arose between the two parties. The buyer attempted to bind the seller to the arbitration provision on the back side of the confirmation document, but the seller asserted that he was not aware of the existence of the provision and did not agree with the buyer that it should be part of the contract.

The trial court in *Leathertone, supra,* 87 N.Y.S.2d at 667, holding that the arbitration provision was not binding on the seller under the facts of that case, made the following observations about the arbitration provision involved therein:

"The clause was one of some ten paragraphs printed on the reverse side of that order, not signed by any officer of respondent and merely had the printed name of respondent at the bottom. Respondent does not claim that the provisions on the reverse side of its communication were called to appellant's attention other than by the legend on the face thereof, in small type and in parenthesis, stating '(See also back.)' An inspection of the actual exhibit shows that the legend is in an inconspicuous place. There is no other reference or suggestion on the face of the form that the transaction is subject to the terms and conditions set forth on the reverse side."

It is in this context, the court said, "A party should not be bound by clauses printed on he reverse side of a document unless it be established that such matter was properly called to its attention and that it assented to the provisions there stated." See *Leathertone, Inc., supra,* at p. 667.

In *Commercial Factors Corp. v. Kurtzman Bros.*, 131 Cal.App.2d 133, 280 P.2d 146 (1965), a seller tried to bind the buyer of certain goods to an arbitration provision on the back of the seller's order blanks. The buyer's agent did not sign one of the order

blanks and signed the others without having an opportunity to see what was on the back side of the orders. The seller signed none of the order blanks which contained a provision that seller must sign the documents in order to have a binding contract. The buyer was not given a copy of the order blanks at the time of the initial transaction, but copies were later mailed. There was no conversation concerning the arbitration provision nor was the buyer's attention directed to the arbitration provision. The California court cited *Leathertone, supra,* as controlling, and held that under the circumstances of the case before it, the arbitration provision on the reverse of the forms was not binding since there was no agreement between the parties to arbitrate.

We distinguish the foregoing cases from the matter before us here. In the present dispute the confirmation documents with the arbitration provision contained on the reverse were sent to the defendant before it had to accept them. The defendant had the documents in its possession for over a month before the sales were confirmed by the endorsement of its representative, Lynn. In the beginning paragraph on the face of the acknowledgment forms the statement, "the order is confirmed subject to the general conditions of sales shown on the reverse side" appears in conspicuous type. It was not in small type or in an inconspicuous place on the instrument. A different factual situation is presented in this matter than was presented in the cases cited by defendant.

■ The case law of this jurisdiction suggests that a party is usually bound by the documents he signs even though as is contended by the defendant in this case it has not expressly accepted all of the contract provisions or is even aware of them. In *Preston v. Howell,* 219 Iowa 230, 236, 257 N.W. 415, 418, we said: "It is also the settled rule of law that if a party to a contract is able to read [the contract], has the opportunity to do so, and fails to read the contract he cannot thereafter be heard to say that he was ignorant of its terms and conditions for the purpose of relieving himself from its obligation." See also *Schlosser v. Van Dusseldorp,* 251 Iowa 521, 101 N.W.2d 715.

Defendant contends that an arbitration clause requires express agreement on the part of both parties in order for it to be embodied in a contract, and cites language in *Des Moines Blue Ribbon Distrib. Co. v. Drewrys, Ltd., U.S.A.,* 256 Iowa 899, 129 N.W.2d 731, to support its contention. Although the language in *Drewrys, supra,* is not exactly in point since it involved the question as to whether language in a letterhead was part of a contract, this court did quote from Williston on Contracts which discusses whether printed terms are an integral part of a contract. Williston on Contracts, Third Ed. (1957) § 90D, reads: "The principal question in deciding cases of this kind is whether the facts present a case where the person receiving the paper should as a reasonable man understand that it contained terms of the contract which he must read at his peril, and regard as part of the proposed agreement. The precise facts of each case are important in reaching a conclusion."

The undisputed facts in this case establish that the defendant did receive from the plaintiff an acknowledgment of its order for material, which defendant had ordered through an agent or broker. The documents stated that the order was confirmed "subject to the general conditions of sales, shown on the reverse side." Such provision was in the first sentence of the main body of the acknowledgment and confirmation documents, and one of the conditions of sale was that both parties agreed that any controversy arising out of the transaction would be settled by arbitration according to the rules of the AAA. The defendant, through its agent, signed, accepted and returned to the plaintiff copies of the acknowledgments of the orders and confirmation documents.

■ Under the facts presented here, we are constrained to the view that a reasonable man, on reading the face of the confirmation documents, and particularly the first sentence thereof referring to the pro-

visions on the reverse side would have looked at the back of the instrument before signing and accepting the contract. A reasonable man would therefore have had notice of the provisions on the back side of the documents and would have accepted the terms on the back by signing the documents. Since one of the provisions on the reverse of the documents provided for arbitration, we deem it further obvious that a reasonable man in signing the documents had notice of the arbitration provisions and could expect to be bound to arbitrate under the terms of the arbitration provisions. Such reasoning is reinforced by reference to *Preston v. Howell,* and *Schlosser v. Van Dusseldorp,* both *supra,* which established the principle that a party is bound by the provisions of a contract which he has signed and accepted although he did not expressly consent to the particular provision in question. This argument is further strengthened by the fact that defendant actually participated in the arbitration proceedings for a time and withdrew therefrom only after it apparently became dissatisfied with the locale for the arbitration hearing. Such facts are not present in any of the cases cited by defendant.

■ In sum, the defendant in signing and accepting the documents which contained an arbitration provision and later participating in the initial arbitration proceedings by filing an answer cannot now be heard to say that the arbitration proceedings were not binding upon it.

■ An issue was made by defendant over whether its agent, Lynn, had the power to bind the corporation to an arbitration provision. The defendant contended Lynn could not have had this power since there was nothing in the corporation's resolutions and bylaws by its board of directors or its shareholders which permitted an officer or agent of the corporation to enter into agreements for arbitration. But, no matter what the actual authority of defendant's agent, Lynn, might have been, defendant's conduct in participating in the initial arbitration proceedings amounted to a ratification by defendant of its agent's acceptance of the arbitration provision in the contracts.

In *Abodeely v. Cavras,* 221 N.W.2d 494, 502 (Iowa 1974), this court used the definition of ratification expressed in Restatement, Second, Agency, and said that "the elements of ratification under the Restatement, Second, Agency, are: (1) the existence of a principal, section 87; (2) an act done as agent, section 85; (3) principal's knowledge of material facts, section 91; and (4) intent of the principal to ratify the agent's act which can be either expressed or implied, sections 93(1) and 94." Also, the court adopted the position of the Restatement, Second, Agency, section 94, which makes "silence when one would naturally be expected to speak may be failure to repudiate and give rise to the inference of affirmance." *Abodeely v. Cavras, supra,* at 503.

■ There is no suggestion in this case that the defendant denied it was the principal in this transaction and that Mr. Lynn was its agent. Therefore, the first two elements of ratification—that there be an agent and a principal—have been established. Another requirement needed to have a valid ratification is that the principal must have knowledge of the material facts, and such knowledge can be inferred from the defendant's initial participation in the arbitration proceedings and its possession of the confirmation documents. The intent to ratify or affirm the contract and agreement to arbitrate—the fourth required element of ratification—was established by defendant's initial participation in arbitration and its failure to object to the arbitration provision when it first received plaintiff's demand for arbitration. If the defendant had not agreed to arbitrate or had not agreed to ratify the arbitration agreement, it should have objected then to the validity of the provision and should not have participated in the arbitration proceedings. Since, as we have previously observed, silence and conduct can amount to a ratification of a contract under Iowa law, we are persuaded by the argument that the defendant, in failing to object to arbitration and in participating in the initial arbitra-

tion proceedings, ratified the arbitration agreement, no matter what authority, actual or implied, its agent had when he signed the confirmation documents.

III. In its second issue stated for review defendant requires us to determine whether there was an enforceable agreement to arbitrate so that the courts of Iowa could enforce a New York judgment which is based on an arbitration agreement. Plaintiff invoked the law of New York to enforce the arbitration agreement while the defendant sought to apply the laws of Iowa to invalidate the provision or render it unenforceable.

■ Section 7501 of the New York Code controls the effect of an agreement to arbitrate, and contains the following language: "A written agreement to submit any controversy thereafter arising or any existing controversy to arbitration is enforceable without regard to the justiciable character of the controversy and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award." It is therefore clear that under New York law, since all that is required to have an enforceable arbitration agreement is to have it in writing and since the present agreement was in writing, the agreement would be enforceable. Section 679.2 of the Code (Iowa) specifies the requirements for an enforceable arbitration agreement: "The parties themselves, or those persons who might lawfully have controlled a civil action in their behalf for the same subject matter, must sign and acknowledge a written agreement, specifying particularly what demands are to be submitted, the names of the arbitrators, and court by which the judgment on their award is to be rendered." Clearly, the agreement to arbitrate in this case does not meet the requirements of this provision of the Iowa statute, since there was no acknowledgment of it and since the agreement did not specify which demands were to be submitted to arbitration, the names of the arbitrators, and the court chosen by the parties to render judgment on the award.

■ Under principles developed under the common law of this state, a participant in arbitration can withdraw from arbitration proceedings at any time, and any agreement on the part of the parties to make such an agreement the binding and exclusive means of settling future disputes is not enforceable. See *Wallace v. Brotherhood of Locomotive Firemen and Enginemen*, 230 Iowa 1127, 1133, 300 N.W. 322, 325; *Oskaloosa Savings Bank v. Mahaska County State Bank*, 205 Iowa 1351, 219 N.W. 530; *Ames Canning Co. v. Dexter Seed Co.*, 195 Iowa 1285, 1289, 190 N.W. 167, 169, and *Prader v. National Masonic Accident Association*, 95 Iowa 149, 161, 63 N.W. 601, 605. However, it also appears to be true that while provisions to bind the parties to the use of arbitration to settle future disputes is not enforceable by the Iowa courts, the courts do not treat them as void and will enforce them after an arbitration award has been given to one of the parties. See *Wallace, Oskaloosa,* and *Prader,* all *supra.*

It is suggested by the defendant that Iowa law should be applied to determine the validity and effect of any agreement of the parties to arbitrate. Defendant claims that Iowa law should be applied in this case is made on the basis of two separate conflict of law doctrines. Under the "place of making" rule, the older of the two doctrines, the law of the place where the contract was made governs the effect, validity, construction and interpretation of the contract. The place of making of the contract is usually the place where the contract was finally accepted. This court adopted such rule in *Haverly v. Union Construction Co.,* 236 Iowa 278, 18 N.W.2d 629 and *Acme Feeds, Inc. v. Berg,* 231 Iowa 1271, 4 N.W.2d 430. The defendant claims that since the documents in this case call for the defendant's acceptance, and since the acceptance was in Iowa, the contract was made in Iowa and the laws of Iowa should be applied to determine the validity and effect of the provision to arbitrate.

Since this court's adoption of the "place of making" rule in the field of conflicts of law, that area of the law has undergone a

radical change. Restatement of Law, Second, Conflicts of Law, reflects this change. Section 218 of that Restatement specifically deals with which law is applicable to determine the validity and effect of an arbitration agreement. Said section provides:

> "The validity of an arbitration agreement, and the rights created thereby, are determined by the law selected by application of the rules of §§ 187–188. This law determines whether a judicial action brought in violation of the provisions of an arbitration agreement can be maintained."

Section 188 of the Restatement has reference to the "most significant relationship" rule to determine the law to be applied with respect to the rights and duties of the parties under a contract where the contract did not make an effective choice as to which state law should be applied in construing or enforcing the contract. In determining which state has the most significant relationship to the issue in question various contacts with the different states are determined. These contacts include the place of contracting, the place of negotiation of the contract, the place of performance, the locale of the subject matter of the contract, and the domicile, residence, nationality, place of incorporation, and place of business. Also, in determining any conflicts of law questions with respect to the interpretation or enforcement of contracts, the following factors must be taken into account:

> "(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> "(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>
> "(a) the needs of the interstate and international systems,
>
> "(b) the relevant policies of the forum,
>
> "(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> "(d) the protection of justified expectations,
>
> "(e) the basic policies underlying the particular field of law,
>
> "(f) certainty, predictability and uniformity of result, and
>
> "(g) ease in the determination and application of the law to be applied."

See Restatement, Second, Conflict of Laws, Choice of Law Principles, § 6, p. 10.

The defendant contends that if the newer rules are to be applied by the court to this transaction, this court would hold that Iowa law would still be applied thereto. Defendant asserts most of the contacts involved in this transaction are within the State of Iowa.

As previously stated, the contract was made in Iowa as the result of the defendant's acceptance of the confirmation documents. The contract could also be considered as principally performed in Iowa, since the delivery of the material—the subject matter of the contract—was in the State of Iowa. Only the plaintiff and the arbitration proceedings in issue were in New York. According to the defendant, these contracts, under the "most significant relationship" rule, make Iowa law applicable to this contract. Such result would make the provision to arbitrate either completely unenforceable or a nullity. However, this analysis would be specious in that it would not require one to make a determination of the most significant relationship with respect to a particular issue in dispute, but to take an overall view of the entire contract relationship of the parties.

In this case the issue in dispute centers around an arbitration provision which permitted the AAA administrator to pick New York as the locale for arbitration, which he in fact selected. Since the arbitration began in New York and the defendant initially participated there in the proceedings, albeit it subsequently attempted to withdraw, New York can be seen as having the most significant relationship to the issue of the validity and effect of the arbitration provisions of the contract. Some New York cases which support this point are *Gantt v. Felipe Y. Carlos Hurtado & Cia, Ltd.*, 297

N.Y. 433, 79 N.E.2d 815 and *I. S. Joseph Co., Inc. v. Toufic Aris & Fils*, 54 A.D.2d 665, 388 N.Y.S.2d 1 (1976).

The foregoing position is fortified by the Comments in the Restatement to Section 218:

"Frequently, the arbitration agreement will refer only to disputes arising under a certain contract and will be one of the provisions of that contract. If so, the state whose local law governs the arbitration agreement will usually be the same as the state whose local law would be applied to determine other issues relating to the contract. This will not, however, always be so. As stated in § 188, Comment *d*, each case should be determined in accordance with the local law of the state which, with respect to the particular issue, has the most significant relationship to the transaction and the parties. Situations will arise where the state of most significant relationship with respect to the issue of arbitration is not the same as the state of most significant relationship with respect to other issues relating to the contract. A possible example is where a contract whose principal elements are located in state X provides for arbitration in state Y. Here it may be that, although X is the state of most significant relationship with respect to most of the issues relating to the contract, Y is the state of most significant relationship with respect to the issue of arbitration.

"One of the principles mentioned in § 6 is the protection of the justified expectations of the parties. An arbitration agreement should be upheld and enforced, if this would be the result under the rule of a state having a reasonable relation to the agreement and the parties, unless the value of protecting the expectations of the parties, together with the interest of the state in having its rule applied, are substantially outweighed in the particular case by the interest of another state in the application of its own local law rule which would deny enforcement to the agreement. The extent of the interest of a state in having its rule applied should be determined in the light of the purpose sought to be achieved by the rule and of the relation of the state to the transaction and the parties."

The foregoing language from Comment *b* of § 218 Restatement, Second, Conflicts, would certainly be applicable in a case where the parties explicitly mention the locale for arbitration in the contract. They did not do so here, but instead incorporated by reference the rules of the AAA into the contract itself. These rules permitted the administrator of the AAA to pick the locale for arbitration where the parties disagreed. In fact, the administrator chose New York as the locale. In other cases where courts of other jurisdictions have faced a similar provision which allowed an agent to pick the locale for arbitration if the parties disagreed, the agent's choice was read back into the contract and the parties were deemed to have agreed on the place chosen as the locale for the arbitration. See *Royal Globe Insurance Co. v. Spain*, 36 A.D.2d 632, 319 N.Y.S.2d 115; *American-British TV Movies, Inc. v. KOPR–TV, Cooper Broadcasting Co.*, 144 N.Y.S.2d 548 (Supreme Court, Special Term, 1955), and *Bradford Woolen Corp. v. Freedman*, 189 Misc. 242, 71 N.Y.S.2d 257 (Supreme Court, Special Term, 1947).

There is no reason such a rationale should not be adopted here. The parties agreed to arbitrate and have such arbitration governed by the rules of AAA which provided that the AAA should determine the locale for arbitration when the parties could not agree. In this case the parties did not decide the locale for the arbitration, and the AAA fixed the locale at New York. In effect, since the parties agreed to give the administrator of AAA such power and since the power was exercised, the decision of AAA to fix New York as the locale for arbitration should be read back into the agreement and the parties themselves should be treated as agreeing on New York as the locale for the arbitration. Once this determination is made, the Comments under § 218 Restatement, Second, become relevant. The state with the most significant relationship to the arbitration issue is obvi-

ously New York since the parties in effect agreed to arbitrate there and the defendant initially participated in the arbitration proceedings by the filing of its answer.

By finding the contract enforceable under New York law, we are in effect protecting the reasonable expectations of the parties. In signing the binding agreement to arbitrate, the parties might have justifiably expected that the provision on arbitration would be valid and enforceable. The Comment to § 218 of the Restatement suggests that justifiable expectations should be protected unless the interest of the state which would deny enforcement of the agreement substantially outweighs those expectations and the interest of another state.

■ We have heretofore stated that agreements which bound the parties to seek arbitration to settle future disputes appeared to be against public policy and not be enforceable. See *Oskaloosa Savings Bank v. Mahaska County State Bank, supra.* However, this policy against arbitration of future disputes was developed at a time when arbitration was a disfavored means of settling disputes and statutes providing for arbitration were not as well developed then as they are now in some states. Such public policy is much weaker now as against a state law such as the one in New York which has procedural and judicial safeguards to protect the rights of any participant in any arbitration proceedings. We should not develop a public policy against the application of such law if the parties choose through an agent to arbitrate in New York, and consequently, the laws of New York should be applied to such a factual situation.

■ Although we believe that the most significant relationship rule would require us to apply New York law to this issue, the parties here by, in effect, agreeing to arbitrate in New York consented to the application of the laws of that state. Restatement Second, Conflicts of Law, § 187, permits the parties to agree on the law to be applied to the contract in most cases so long as it does not override the public policy of a state having a materially greater interest in the transaction.

In *Mulcahy v. Whitehill,* 48 F.Supp. 917 (D.C.Mass.1943), the court was faced with an agreement to arbitrate which explicitly made New York the place of arbitration. The court stated, "that the defendant's unqualified submission of disputes to arbitration necessarily implied a submission to the rules of procedure of the American Arbitration Association and to the law of New York governing such arbitration." We have no reluctance to apply such a rationale in this case where the parties were not explicit in the agreement as to where arbitration was to be located, nor to conclude there was an enforceable agreement between the parties here; that the AAA's determination, which was enforced by the New York court and confirmed by the trial court in this state, was valid and subsisting.

IV. Finally, we are asked by the defendant to find, conclude and determine the New York court was without jurisdiction to render a binding *in personam* judgment against the defendant on service of process by registered mail only.

We have determined *supra* that there was a valid agreement to arbitrate the differences between plaintiff and defendant under the rules of the American Arbitration Association and further we have determined that any award by the association could be enforced "in the highest court of the forum" of the state fixed as the locale for arbitration. Under the rules of the AAA which were incorporated by reference into the contract between the parties, the association had the power to determine and fix the locale of arbitration if the parties failed to agree thereon. Further, a rule of the AAA permitted service of notice of any arbitration proceedings or of any judicial proceedings related to the arbitration by mail. In this case the administrator of the AAA fixed New York as the locale for arbitration, and arbitration proceedings were had and completed, and an award was determined, in New York.

This state is required to recognize and give full faith and credit to judgments of

courts of sister states so long as those courts have jurisdiction to enter such judgments. U.S.Const., Art. IV, § 1. We have held that such judgments as are duly authenticated shall be treated as *prima facie* valid. *Hansen v. Haagensen,* 178 N.W.2d 325 (Iowa 1970), cert. den. 401 U.S. 912, 91 S.Ct. 879, 27 L.Ed.2d 811; *McKee v. McKee,* 239 Iowa 1093, 32 N.W.2d 379.

This court has also recognized that personal jurisdiction can be established by consent. *Oakes v. Oakes,* 255 Iowa 1315, 125 N.W.2d 835; *Morse v. Morse,* 247 Iowa 1113, 77 N.W.2d 622; *Incorporated Town of Dows v. DeLong,* 149 Iowa 251, 128 N.W. 341.

We believe the record establishes defendant consented to personal jurisdiction over it by the New York court. We have determined there was a valid arbitration agreement, and that the language in the agreement for arbitration must be construed to mean that defendant agreed to submit itself to the jurisdiction of the forum of any state the administrator of the AAA picked as the locale for arbitration. Since the administrator's choice was New York, the defendant, ergo, consented to submit to the jurisdiction of the courts of New York.

Obviously, § 7501 of the New York Civil Practice Act conferred jurisdiction upon the courts of New York to enforce written arbitration agreements and enter judgments on awards made in a New York arbitration. New York courts have construed said section and prior similar statutes to mean that New York courts have jurisdiction to enforce a New York arbitration where the contract specified New York as the place of arbitration. See *Gantt v. Felipe Y. Carlos Hurtado & Cia, Ltd., supra;* cf. *Samincorp So. Amer. M & M Corp. v. Tikvah Min. Co.,* 43 Misc.2d 27, 250 N.Y.S.2d 151.

Further, the courts are willing to see the statute and its predecessors apply to give New York courts jurisdiction even when the contract allows the AAA to fix the place of arbitration and New York was picked as the locale. See *American-British TV Mov-*

*ies, Inc. v. KOPR–TV, supra,* and *Bradford Woolen Corp. v. Freedman, supra.* The last cited cases were decided under a prior law that was more specific in granting the New York courts jurisdiction to enforce agreements to arbitrate in New York, but the present statute can be construed to cover the situation in this case as the court did in *Samincorp v. Tikvah, supra.*

In summary, we believe and hold the defendant consented to the jurisdiction of the New York court either by the language of the arbitration provision itself and the fact that New York was chosen as the locale for arbitration, or the combination of these latter facts along with the construction of the New York statute which gives New York courts jurisdiction to enforce agreements to arbitrate in that state.

The defendant complained, "There was no provision of any New York law offered which would sustain, or in any manner authorize or support the provision of the 'order to show cause,' and its service by registered mail." Defendant claimed that since plaintiff pleaded the New York court had jurisdiction, the plaintiff was required to prove it.

We do not agree with the last stated position of the defendant. In *McKee v. McKee, supra,* we said an authenticated copy of a judgment of a sister state in proper form was evidence of the jurisdiction of the court which rendered the judgment. Defendant offered no evidence in this case by which it attempted to show the New York law did not give jurisdiction to the courts of that state in this situation, or did not permit service of process by registered mail. Plaintiff introduced evidence showing that § 7501 of the New York Civil Practice Act gave the court jurisdiction to enforce New York arbitration awards, and also established in the record that New York courts approve of service of notice by mail where the parties consent to its use. In *Samincorp, supra,* and in *Bradford Woolen Corp. v. Freedman, supra,* the parties agreed to follow AAA rules which included service of process by mail and the courts in those cases concluded that service of proc-

ess by mail where the parties consented to such service was proper.

In this case, by adopting the rules of the American Arbitration Association, which permitted the association to fix the locale of arbitration and further provided for service of any proceedings in connection with the award, or any subsequent proceedings, by mail, the defendant agreed to such mailed service of notice. The cases cited above establish that such an agreement in arbitration cases is valid and will authorize such service as the agreement permits. We must, therefore, find and conclude that the service of process by registered mail upon the defendant of the pendency of the proceedings in the New York court was valid and subjected the defendant to the jurisdiction of the New York court.

V. We find no reversible error in the record. The findings of fact of the trial court were, we find, supported by substantial evidence and are binding upon us here.

Finding no reversible error, we affirm the trial court.

AFFIRMED.

All Justices concur except MASON, J., who dissents.