# IN THE COURT OF APPEALS OF IOWA

No. 3-1141 / 12-2014
Filed March 26, 2014

**TRAVELERS PROPERTY CASUALTY**
**COMPANY OF AMERICA, a Connecticut**
**Corporation and ST. PAUL FIRE &**
**MARINE INSURANCE COMPANY, a**
**Connecticut Corporation,**
        Plaintiff-Appellees,

**vs.**

**FLEXSTEEL INDUSTRIES, INC.,**
        Defendant-Appellant,

**and**

**SENTRY INSURANCE COMPANY, et al.,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Dubuque County, Michael J. Shubatt, Judge.

        This appeal raises two issues: (1) whether a company sued in Indiana is entitled to dismissal or stay of an Iowa declaratory judgment action filed by its insurer and (2) whether Iowa law governs the effect of pollution exclusion clauses in several insurance policies.  **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

        Les V. Reddick of Kane, Norby & Reddick, P.C., Dubuque, and Mark McCormick and Margaret C. Callahan of Belin McCormick, P.C., Des Moines, for appellant.

        Robert V.P. Waterman Jr. and Jason J. O'Rourke of Lane & Waterman, L.L.P., Davenport, and Kennith C. Newa and Jeffrey C. Gerish of Plunkett Cooney, Bloomfield Hills, Michigan, for appellee Travelers Property Casualty.

        Dominica C. Anderson, Paul J. Killion, and Michael J. Dickman of Duane Morris, L.L.P., San Francisco, California, and Patrick W. Driscoll, until withdrawal, and Daniel P. Kresowik of Stanley, Lande & Junter, P.C., Davenport, for appellee Great American Insurance Company.

E. David Wright of Gilloon, Wright & Hamel, P.C., Dubuque, and Heidi Vogt, Nathan Fronk, and David Westrup of von Briesen & Roper, S.C., Milwaukee, Wisconsin, for appellees Sentry Insurance and Federal Insurance Company.

Valerie Walker Rodriguez of Elenius, Frost & Walsh, Chicago, Illinois, and Jeffrey Boehlert of Patterson Law Firm, L.L.P., Des Moines, for appellee Continental Casualty Company.

Elise Allen and Mark Zimmerman of Clausen Miller, P.C., Chicago, Illinois, and Kevin Collins of Nyemaster Goode, P.C., Cedar Rapids, for appellees National Union Fire Insurance Company and Illinois National Insurance Company.

Kent Gummert of Lederer, Weston & Craig, P.L.C., West Des Moines, and Charles Morrissey and Wayne Karbal of Karbal, Cohen, Economou, Silk & Dunne, Chicago, Illinois, for appellees Hartford Fire Insurance Company and Twin City Fire Insurance Company.

Roger Stone and Paul Gamez of Simmons, Perrine, Moyer & Bergman, P.L.C., Cedar Rapids, and Rebecca R. Haller of Meckler, Bulger, Tilson, Marick & Pearson, Chicago, Illinois, for appellee American Guarantee & Liability Insurance Company.

Ross D. Roloff of Merlo, Kanofsky & Gregg, L.T.D., Chicago, Illinois, and Matthew Novak of Pickens, Barnes & Abernathy, Cedar Rapids, for United States Fire Insurance Company.

James Zmuda of Califf & Harper, P.C., Moline, Illinois, and James Murray and Todd Rowe of Tressler, L.L.P., for appellee Fireman's Fund Insurance Company.

Heard by Danilson, P.J., and Vaitheswaran and Mullins, JJ.

**VAITHESWARAN, J.**

This appeal raises two issues: (1) whether a company sued in Indiana is entitled to dismissal or stay of an Iowa declaratory judgment action filed by its insurer and (2) whether Iowa law governs the effect of pollution exclusion clauses in several insurance policies.

## I. Background Proceedings

Chair manufacturer Flexsteel Industries, Inc., which maintains its headquarters in Dubuque, Iowa, was sued in Indiana state court by individuals claiming to have been exposed to chemicals released from two of its Indiana plants. Flexsteel carried primary and excess liability insurance issued by a number of insurance companies. Two of those companies, Travelers Property Casualty Company of America and St. Paul Fire & Marine Insurance Company, sued Flexsteel in Iowa, seeking a declaration that pollution exclusion provisions eliminated coverage, including any duty to defend or indemnify Flexsteel in connection with the Indiana lawsuit. Other insurers entered the Iowa lawsuit and, in time, sought the same relief as Travelers and St. Paul.

Meanwhile, Flexsteel filed a third-party insurance coverage complaint in the Indiana action. The company also moved to dismiss or stay the Iowa action pending resolution of the Indiana litigation. Travelers and St. Paul, in turn, moved for summary judgment in the Iowa action. They asserted that, under Iowa law, the pollution exclusion barred coverage.

The Iowa district court denied Flexsteel's motion to dismiss or stay and granted Travelers' and St. Paul's motion for summary judgment. Applying Iowa

law, the court concluded Travelers and St. Paul did not have a duty to defend Flexsteel in the Indiana litigation.

The remaining insurers in the Iowa litigation filed their own motions for summary judgment. Additionally, Travelers and St. Paul filed a second declaratory judgment action in Iowa state court to resolve coverage obligations in a separate environmental lawsuit filed against Flexsteel in Indiana federal court. Flexsteel again moved to dismiss or stay this action, and Travelers and St. Paul again moved for summary judgment. The Iowa district court denied the motion to dismiss or stay and granted the insurers' summary judgment motions in both suits. Invoking its reasoning in the first summary judgment ruling, the court concluded "Iowa law applies to all of the policies at issue and . . . the pollution exclusion provisions have full force and effect." This appeal followed.

## II. *Denial of Motion to Dismiss or Stay*

Flexsteel contends the district court should not have denied its motions to dismiss or stay the Iowa actions. All involved agree the factors relevant to a ruling on a motion for stay are as follows:

> "comity, the desirability of avoiding a multiplicity of forums, whether the foreign litigation is at an advanced or preliminary stage, the likelihood of obtaining complete relief in the foreign jurisdiction, and the possibility that a judgment entered in the foreign jurisdiction will give rise to collateral estoppel or will render the matter before the court res judicata. Where a prior foreign action involves the same parties and the same issues and is pending before a court capable of doing prompt and complete justice, the court's discretion may be freely exercised in favor of a stay."

*First Midwest Corp. v. Corporate Fin. Assocs.*, 663 N.W2d 888, 891 (Iowa 2003) (quoting 1 Am. Jur. 2d *Actions* § 78, at 773 (1994)). They also agree that a ruling

on this type of motion lies within the district court's discretion and will not be overturned absent an abuse of discretion. *See id.* at 890–91.

Flexsteel contends the district court's ruling reflects such an abuse of discretion. The company cites Travelers' conduct before the Indiana lawsuit was filed and, specifically, its refusal to respond to requests for confirmation of coverage and its "race" to the Iowa courthouse. Flexsteel specifically asserts that "in contriving to ensure that their Iowa action was the first-filed coverage action," Travelers engaged in impermissible "forum-shopping" that required dismissal of the Iowa action. Flexsteel also contends the district court placed too much emphasis on the "first-filed" status of the initial declaratory judgment action.

Flexsteel's forum-shopping argument finds some support in *First Midwest*, where the court noted that other jurisdictions have scrutinized declaratory judgment actions "'to ensure that the declaratory plaintiff is not motivated by forum-shopping concerns.'" *Id.* at 892 (quoting *BASF Corp. v. Symington*, 50 F.3d 555, 558 (8th Cir. 1995)). While Travelers and St. Paul assert that the court did not formally adopt forum-shopping as a factor for consideration, the court evidently found the concern significant enough to mention it. *See BASF*, 50 F.3d at 559 ("Despite the fact that forum shopping is not among the factors enumerated in *Murphy Oil,* it is appropriate that we consider it when relevant.").

That said, both *First Midwest* and *BASF* turned on a defendant's attempt to wrest control of the forum selected by the "natural plaintiff," defined as the party claimed to have been injured. *See id.* at 558 (stating "[T]he natural plaintiff's choice of forum and law will be disturbed only in exceptional circumstances."); *First Midwest,* 663 N.W.2d at 890, 892 (noting plaintiff filed suit

in Nebraska and defendant then filed declaratory judgment action in Iowa and citing *BASF* for proposition that more scrutiny is required where defendant is attempting to wrest choice of forum from natural plaintiff). Here, in contrast, the "natural plaintiffs" have no skin in the game. Their lawsuits were filed in Indiana and remain in Indiana. The Iowa lawsuits are between "natural" defendant Flexsteel and its insurers. For that reason, the rationale underlying the forum-shopping consideration is inapplicable, and we decline to apply it in our review of the stay ruling.

We turn to Flexsteel's second argument, the district court's observation that Travelers' and St. Paul's declaratory judgment action was entitled to go forward because it was the first-filed coverage action. Contrary to Flexsteel's assertion, the court did not rely on the "first-filed" status of the action to the exclusion of the other factors cited in *First Midwest*. The court simply gave that factor "heavy weight." The court went on to consider and apply the "[o]ther factors," as follows:

> There will be no multiplicity of forums on the coverage issues, because it can be addressed by the Iowa Court, which can grant complete relief on the issue. Both the underlying Indiana tort action and the third-party coverage claim filed therein are in the preliminary stage. Thus, the possibility of an Indiana court entering a judgment that will result in collateral estoppel or render the coverage issue res judicata is, if existent, minimal. The Iowa action also involves more interested parties and thus is more comprehensive.

We discern no abuse of discretion in the court's application of these factors. Accordingly, we affirm the district court's denial of Flexsteel's motion for stay or dismissal of the Iowa action. We reach the same conclusion with respect to the court's second ruling on the various insurers' motions to stay or dismiss which,

as noted, were premised on the court's first ruling. We also affirm the court's denial of Flexsteel's motion to stay or dismiss the second Iowa action related to the federal lawsuit in Indiana.

### III. Choice of Law

At the heart of the Iowa filings is the law on pollution exclusions. Iowa law holds that pollution exclusions like the ones contained in Flexsteel's policies unambiguously bar coverage for bodily injury or property damage resulting from the release of pollutants. *Bituminous Cas. Corp. v. Sand Livestock Sys., Inc.,* 728 N.W.2d 216, 222 (Iowa 2007). Indiana law, in contrast, holds that language similar to the language contained in these policies is ambiguous and is construed against the insurer and in favor of coverage. *State Auto. Mut. Ins. Co. v. Flexdar, Inc.*, 964 N.E.2d 845, 851–52 (Ind. 2012). Understandably, then, the insurers want Iowa law to apply, while Flexsteel would prefer the application of Indiana law on the coverage issue.

Against this backdrop, Flexsteel contends the district court erred in concluding Iowa rather than Indiana law governs the interpretation of the pollution exclusion. *See City of Johnston v. Christenson*, 718 N.W.2d 290, 296 (Iowa 2006) (setting forth the standard of review). Because the insurers did not include a choice-of-law provision in their insurance contracts, Flexsteel's argument requires us to consider the Restatement (Second) of Conflict of Laws. *See Cole v. State Auto. & Cas. Underwriters*, 296 N.W.2d 779, 781 (Iowa 1980) (noting "contracting parties can themselves determine the law which is to control" and applying Restatement where they did not). The parties cite three provisions of that treatise: sections 193, 188, and 6.

We begin with the most specific provision, section 193. *See Chesapeake Utils Corp. v. Am. Home Assur. Co.*, 704 F. Supp. 551, 556 (D. Del. 1989) ("Whereas § 188 announces choice of law principles in contract disputes generally, § 193 specifically dictates choice of law in insurance disputes."); *United Fire & Cas. Co. v. Titan Contractors Serv., Inc.*, No. 4:10-CV-2076 CAS, 2013 WL 316060, at *5 (E.D. Mo. Jan. 28, 2013) ("Because the policy at issue is a liability insurance contract, our analysis begins with section 193."); *Reichhold Chems., Inc. v. Hartford Accident & Indem. Co.*, 750 A.2d 1051, 1056 (Conn. 2000) ("With respect to liability insurance contracts, the starting point is § 193 of the Restatement (Second), supra, which creates a rebuttable presumption in favor of the state where the insured risk is located. In order to overcome this presumption, another state's interest must outweigh those of the state where the insured risk is located and must be sufficiently compelling to trump the § 193 presumption."). That provision states:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be *the principal location of the insured risk during the term of the policy*, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 193 (1971) (emphasis added). "Casualty insurance" includes liability insurance policies. *See Gabe's Constr. Co., Inc. v. United Capitol Ins. Co.,* 539 N.W.2d 144, 146–47 (Iowa 1995).

All agree that that the key determination under this provision is the "principal location of the risk." Flexsteel argues the principal location is Indiana.

It notes that "[t]he only sites for which [it] seeks coverage are located in Indiana; the only lawsuits for which [it] seeks a defense were filed in Indiana; and the only allegations against Flexsteel relate to its alleged conduct in Indiana." Travelers counters that "[w]here as here, the liability policies are multiple-risk policies covering a national, publicly traded company conducting business in virtually all fifty states, there is no principal location of the risk, and Section 193 carries little or no weight in the analysis." In resolving these arguments, we begin with the comments to section 193.

Comment b defines "insured risk" as "the object or activity which is the subject matter of the insurance." Restatement (Second) of Conflict of Laws § 193 cmt. b. The comment continues: "The location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state." *Id.*

> Situations where this cannot be done, and where the location of the risk has less significance, include (1) where the insured object will be more or less constantly on the move from state to state during the term of the policy and (2) where the policy covers a group of risks that are scattered throughout two or more states.

*Id.* The principal location "enjoys greatest significance when an immovable is involved, such as when the risk insured against is damage by fire to a particular building." *Id.*

Because we are dealing with commercial liability policies, the object or activity which is the subject matter of the insurance is not an immovable object, such as a building. The object is Flexsteel's business operation. *See Cont'l Ins. Co. v. Beecham, Inc.,* 836 F. Supp. 1027, 1036 (D.N.J. 1993) ("[T]he relevant

consideration is the location of the risks covered by the contract at the time the contract was entered into and throughout the term of the contract, not where any given insured risk came to fruition."); *United Fire,* 2013 WL 316060, at *5 ("[T]he insurance covers the liability associated with a contractor's business operations. The insured risk, therefore, is not an immovable object such as a particular building or house.").  That said, the summary judgment record reveals that the primary location of Flexsteel's buildings and the primary location of Flexsteel's business operation are one and the same.

According to that record, Flexsteel's business operation was located at ten sites in Indiana and one site in Iowa during the relevant policy periods.  No other business operations were identified, either in these two states or elsewhere.  Nor does the summary judgment record reveal that the business operation was "constantly on the move from state to state."  *See* Restatement (Second) of Conflicts of Laws § 193 cmt. a ("There may be no principal location of the insured risk in the case of contracts for the insurance of things, such as ships, trucks, airplanes and railroad cars, that are constantly on the move from state to state. In such a case, the location of the risk can play little role in the determination of the applicable law.  The law governing insurance contracts of this latter sort must be determined in accordance with the principles set forth in the rule of §188."). Finally, there is no indication that the policies covered a group of risks scattered *throughout* two or more states.  *See* Restatement (Second) of Conflicts of Laws 193 cmt. 6 (emphasis added.)  According to the summary judgment record, the business operation was located at fixed plants throughout one state—Indiana— and at one site in another state—Iowa.  *See Emp'rs Mut. Cas. Co. v. Lennox Int'l,*

*Inc.*, 375 F. Supp. 2d 500, 507 (S.D. Miss. 2005) (finding no principal location but noting that, if there was one, it was not Mississippi, which only had one location, but Texas that had thirty-one separate locations). Accordingly, application of comment b would suggest that the insured risk is principally located in a single state: Indiana.

We turn to comment f, which specifically addresses "multiple-risk policies." It states:

> A special problem is presented by multiple risk policies which insure against risks located in several states. A single policy may, for example, insure dwelling houses located in states X, Y and Z. These states may require that any fire insurance policy on buildings situated within their territory shall be in a special statutory form. If so, the single policy will usually incorporate the special statutory forms of the several states involved. Presumably, the courts would be inclined to treat such a case, at least with respect to most issues, as if it involved three policies, each insuring an individual risk. So, if the house located in state X were damaged by fire, it is thought that the court would determine the rights and obligations of the parties under the policy, at least with respect to most issues, in accordance with the local law of X. In any event, that part of a policy which incorporates the special statutory form of a state would be construed in accordance with the rules of construction of that state.

Restatement (Second) of Conflict of Laws § 193 cmt. f.

Courts have reached differing conclusions about the meaning and applicability of this provision. In *St. Paul Fire & Marine Insurance Co. v. Building Construction Enterprises, Inc.,* 526 F.3d 1166, 1169 (8th Cir. 2008), the court was asked to treat construction contracts insured by multiple-risk policies covering the United States and Canada as separately insured contracts under comment f. The court declined the invitation, stating "we find no indication that the parties intended a different state's laws to control interpretation of the

insurance policies for each written construction contract." *St. Paul Fire*, 526 F.3d at 1169. The court noted that the insurance policies and other documents did not identify where the risk would be principally located during the life of the policy. *Id.*; *see also Brown v. Home Ins. Co.,* 176 F.3d 1102, 1106 (8th Cir. 1999) (noting that even under the approach advocated in comment f, "it is not always possible to find a location for the insured risk"); *Weitz Co. v. Lexington Ins. Co.,* ___ F. Supp. 2d ___, ___, 2013 WL 5998243 at *11–12 (S.D. Iowa 2013) (following *St. Paul Fire*); *Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 883 F. Supp. 1101, 1108 (E.D. Mich. 1995) ("[B]ecause the Fireman's Fund policy covers Dow's liability and such liability is spread throughout the United States and Canada, there is no principal location of the risk and section 193 does not apply."); *Beecham,* 836 F. Supp. at 1036 ("By its very terms, however, comment f is of limited scope. It applies only to policies covering risks for which a state requires a particular statutory form, typically fire insurance policies, which form will generally be incorporated into the policy.").

Other jurisdictions have applied comment f to policies covering risks in multiple jurisdictions. *See Shapiro v. Associated Int'l Ins. Co.,* 899 F.2d 1116, 1120 (11th Cir. 1990) ("[A]lthough the risks covered under the Associated umbrella policy were spread out over several states, the Restatement advises application of the substantive law of the state in which each individual risk is located when adjudicating issues concerning that risk, treating the comprehensive policy effectively as several different policies."); *Bituminous Cas. Corp. v. Sand Livestock Sys., Inc.*, No. C04-4028-PAZ, 2005 WL 1476441, at *5–6 (N.D. Iowa June 22, 2005) (applying comment f in an opinion predating *St. Paul*

*Fire* and concluding "each of the insurance policies should be treated as four separate policies, with separate commercial lines policies for Iowa, Nebraska, Kansas, and Illinois, and separate umbrella policies for Iowa, Nebraska, Kansas, and Illinois"); *Curran Composites, Inc. v. Liberty Mut. Ins. Co.*, 874 F. Supp. 261, 264 (W.D. Mo. 1994) ("The insurance policies in this case covered multiple manufacturing facilities located in several different states.  Under § 193 comment (f), which addresses multiple risk insurance policies covering risks located in different states, each insured risk is treated as though it were insured by a separate policy.  Accordingly, the law of the state in which the specific risk is located generally applies."); *Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 863 F. Supp. 1237, 1240 (D. Nev. 1994) ("National Union points out that Pioneer's Policy covered several facilities in several states. Section 193 of the Restatement envisions such multiple risk policies.  In multiple risk policies, courts treat the policy as though it were several separate policies so that a dispute involving a particular facility will be governed by the law of the state in which that facility is located."); *Chesapeake,* 704 F. Supp. at 557 (applying Restatement section 193 comment f as well as section 188 and concluding "the claims relating to the Maryland site will be analyzed under Maryland law, while Delaware law will govern those claims pertaining to the Delaware site."); *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 17 Cal. Rptr. 2d 713, 719 (Cal. Ct. App. 1993) ("We believe the multiple risk approach suggested by Witkin and the Restatement should apply here."); *Commercial Union Ins. Co. v. Porter Hayden Co.*, 698 A.2d 1167, 1205–06 (Md. Ct. App. 1997) (applying Restatement section 193 comment f approach).

The Iowa Supreme Court has not weighed in on this debate, and we find it unnecessary to do so either because comment f begins with an assumption that there is no primary location of the insured risk.  As discussed, comment b suggests there is a primary location of the insured risk—Indiana.

We conclude Restatement 193 as amplified by comment b requires the application of Indiana law rather than Iowa law to the interpretation of the pollution exclusion provision of the insurance policies.

We reach the same conclusion under the more general Restatement provision, section 188.  That section provides in part:

> (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6[1] to determine the law applicable to an issue include:
>   (a) the place of contracting,
>   (b) the place of negotiation of the contract,
>   (c) the place of performance,
>   (d) the location of the subject matter of the contract, and
>   (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
>   These contacts are to be evaluated according to their relative importance with respect to the particular issue.
> (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will

---

[1]       (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
   (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
      (a) the needs of the interstate and international systems,
      (b) the relevant policies of the forum,
      (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
      (d) the protection of justified expectations,
      (e) the basic policies underlying the particular field of law,
      (f) certainty, predictability and uniformity of result, and
      (g) ease in the determination and application of the law to be applied.
Restatement (Second) of Conflict of Laws § 6.

usually be applied, except as otherwise provided in §§ 189–199 and 203.

Restatement (Second) of Conflict of Laws § 188. The Iowa Supreme Court invoked this provision in *Cole v. State Automobile & Casualty Underwriters*, 296 N.W.2d 779, 781–82 (Iowa 1980). The court stated, "We think it is clear that choice-of-law questions are now to be determined under the Restatement (Second) test: intent of the parties or the most significant relationship. In failing to recognize this the trial court erroneously applied the discarded rules of the first Restatement." *Cole*, 296 N.W.2d at 782.

We begin with factors (a), (b), and (e), the place of contracting and negotiating and "the domicil, residence, nationality, place of incorporation and place of business of the parties." There is no question Flexsteel was headquartered in Iowa and the insurance agent listed on the Travelers policies was located in Iowa. But no in-person negotiations took place in Iowa. Indeed, Travelers' underwriting offices were in St. Louis and Chicago, and communication with Flexsteel was primarily, if not exclusively, telephonic and electronic. Accordingly, the place of contracting and negotiating and the other cited factors are of little significance. *See* Restatement (Second) of Conflict of Laws § 188 cmt. e ("This contact is of less importance when there is no one single place of negotiation and agreement, as, for example, when the parties do not meet but rather conduct their negotiations from separate states by mail or telephone.").

The place of performance is unclear. If the focus is on where the premiums were paid, the record reflects that Travelers' out-of-state billing units

sent the premium statements to Flexsteel's Iowa location or the location of its Iowa agent. *See White v. Famers Ins. Exch.*, No. C96-1052, 1998 WL 34112764, at *4–5 (N.D. Iowa Feb. 6, 1998) (citing *Hartford Accident & Indem. Co. v. Cooper Park Dev. Corp.*, 169 F.2d 803 (3d Cir. 1948) for the proposition that performance occurs where premiums are paid); *see also Weitz Co.*, 2013 WL 5998243, at *13 (S.D. Iowa 2013) (stating place of performance of insurance contract was place where premiums were paid absent some provision in the policy to the contract). If the focus, instead, is on where insurance payouts would be made, Indiana is the state with the most significant relationship. *See Motorists Mut. Ins. Co. v. Yahya*, ___ F. Supp. 2d ___, ___, 2014 WL 172123, at *4 (N.D. Ind. 2014) (stating the place of performance is where "insurance funds will be put to use" (citing *Hartford Accident & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 293 (Ind. Ct. App. 1997)). This factor, therefore, is in equipoise.

We turn to the location of the subject matter of the contract. With respect to this factor, Flexsteel encourages us to zero in on the specific language in dispute—the pollution exclusion clause—while the insurers ask us to examine the contract as a whole. *Joseph L. Wilmotte & Co. v. Rosenman Bros.*, 258 N.W.2d 317, 326 (Iowa 1977) is instructive on this point. There, the court stated, "In determining which state has the most significant relationship *to the issue in question* various contacts with the different states are determined." *Joseph L. Wilmotte*, 258 N.W.2d at 326 (emphasis added). The court proceeded to analyze the question as follows:

> In this case the issue in dispute centers around an arbitration provision which permitted the AAA administrator to pick New York as the locale for arbitration, which he in fact selected. Since the

arbitration began in New York and the defendant initially participated there in the proceedings, albeit it subsequently attempted to withdraw, New York can be seen as having the most significant relationship to the issue of the validity and effect of the arbitration provisions of the contract.

*Id.* Adopting this specific-issue approach, we conclude the location of the subject matter of the contract was Indiana. As discussed in connection with our application of section 193, the summary judgment record tells us the principal location of the insured risk was Indiana. Additionally, the environmental lawsuits were filed in Indiana and were premised on claimed hazards in Indiana alleged to have been sustained by Indiana residents. Indiana had the most significant relationship.

In sum, the choice-of-law provisions of sections 193 and 188 require the application of Indiana law to the interpretation of the pollution exclusion clauses. We find it unnecessary to separately analyze section 6 of the Restatement.

### IV. Conclusion

We affirm the district court's denial of Flexsteel's motions for stay or dismissal and reverse the district court's grant of the insurers' motions for summary judgment. We vacate the summary judgment rulings and remand for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**